IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HWY 67 DEALERSHIP JV | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-cv-784-L-BT |
| | § | |
| DEPOSITORS INSURANCE COMPANY | § | |
| *Defendant.* | § | |

## DEFENDANT DEPOSITORS INSURANCE COMPANY'S BRIEF IN SUPPORT OF RENEWED MOTION TO STRIKE OR LIMIT PLAINTIFF HWY 67 DEALERSHIP JV'S RETAINED EXPERT JEFF SEATON

Defendant Depositors Insurance Company ("Depositors") files this Brief in Support of its Renewed Motion to Strike Plaintiff HWY 67 Dealership JV's ("Plaintiff") Retained Expert Jeff Seaton ("Seaton"), or in the alternative to limit his testimony, and would respectfully show as follows:

# I.     TABLE OF CONTENTS

I.     TABLE OF CONTENTS……………………………….…………...………....ii

II.     TABLE OF AUTHORITIES……………………………….………...…………iii

III.     INTRODUCTION……………………………….……………...………………1

IV.     PROCEDURAL BACKGROUND……………………………….…...…………1

V.     FACTUAL BACKGROUND…………………………….….……………………2

VI.     STANDARD OF REVIEW………………………………….…...……………5

VII.     ARGUMENTS & AUTHORITIES…………………………….…………...………7

     A.     Plaintiff's designations of Seaton do not comply with Rule 26…………7

        i.     *Seaton's report failed to provide a basis for his opinions on damage to the roof membrane and the date damage occurred, and subsequent opinions on possible "microfractures" were not timely disclosed*…………………………………………………..………7

     B.     Seaton's opinions are unreliable because his methodology admittedly failed to consider any data beyond the alleged date of loss and failed to segregate damages……………………………………………………….…14

     C.     Seaton's opinions are irrelevant because they do not help the trier of fact understand the evidence or determine a fact in issue………………….…16

VIII.     PRAYER……………………………….…………………………………………17

## II.    <u>TABLE OF AUTHORITIES</u>

**Cases**

*Brosius v. Home Depot Inc.*, No. 6:20-cv-1136-ACC-DCI, 2022 U.S. Dist. LEXIS 22839, at *34-35 (M.D. Fla. Feb. 7, 2022)……………………………………………….……..…..11

*Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668-69 (5th Cir. 1999)………………....……...6

*Cromwell v. Wal-Mart Stores, Inc.*, 46 F. App'x 733 (5th Cir. 2002)………………....……...5

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)…………………….……...5, 6, 7

*Fosberg v. Tricam Indus.*, No. 4:20-CV-126-A, 2021 U.S. Dist. LEXIS 25689, at *4 (N.D. Tex. Feb. 10, 2021)……………………………………………………….……..…..11

*Garcia v. State Farm Lloyds*, 629 F. Supp. 3d 504, 508 (N.D. Tex. 2022)……………..…….15

*Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990)……………………..……..11, 13

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)…………………………...…..……...14

*Hilltop Church of the Nazarene v. Church Mut. Ins. Co.*, No. 6-21-cv-00322, 2022 U.S. Dist. LEXIS 229148, at *4-5 (E.D. Tex. Dec. 20, 2022)………………………..……...14

*In re Aries Marine Corp.*, No. 19-10850; 19-13138, 2023 U.S. Dist. LEXIS 8304, at *11 (E.D. La. Jan. 17, 2023)………………………………………………………….……..…..11

*Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012)………………………...…..…...6, 14

*Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 354 (5th Cir. 2007)……………..…….5, 6, 7

*Kozak v. Medtronic, Inc.*, 512 F. Supp. 2d 913, 915 (S.D. Tex. 2007)…………….………....9

*Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)………………………...…..……...5

*Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002)………………….…….……...5

*Michaels v. Avitech, Inc.*, 202 F.3d 746, 753 (5th Cir. 2000)…………………..……..……...16

*Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)…………………….…....…...6

*Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004)…………………..…….10

*Nilssen v. Motorola, Inc.*, No. 93 C 6333, 1998 U.S. Dist. LEXIS 19161, at *7 (N.D. Ill. Nov. 30, 1998)……………………………………………………………….……..…..9

*Norris v. Kawasaki Motors Corp., USA*, No. H-16-2424, 2018 U.S. Dist. LEXIS 131201, at *15 (S.D. Tex. Aug. 6, 2018)………………………………………………….……..…..11

*Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983)……………….……..…..…..7

*Roman v. W. Mfg., Inc.*, 691 F.3d 686, 694 (5th Cir. 2012)………………….……..…..6, 7

*State Auto. Mut. Ins. Co. v. Freehold Mgmt.*, No. 3:16-CV-2255-L, 2019 U.S. Dist. LEXIS 55052, \*78 (N.D. Tex. Mar. 31, 2019)…………………………………...……..…………..13

*Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003)……....10

*Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 163 (Tex. 1971)…………….…………….15

*United States v. Posado*, 57 F.3d 428, 433 (5th Cir. 1995)…………………………...……..…6

*Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010)……………..……..….5

**Statutes**

Fed. R. Civ. P. 26(a)(2)…………………………………………………………...……..…1

Fed. R. Civ. P. 26(a)(2)(A)…………………………………………………...……..……..7

Fed. R. Civ. P. 26(a)(2)(B)…………………………………………………….……..…7, 13

Fed. R. Civ. P. 26(a)(2)(B)(i)………………………………………………….……..…8

Fed. R. Civ. P. 26(a)(2)(D)……………………………………………………….……..…7, 11

Fed. R. Civ. P. 37(c)(1)……………………………………………………...……..…9, 11

Fed. R. Evid. 702(a)…………………………………………………………….……..…6

### III.    INTRODUCTION

1.      Plaintiff disclosed retained expert Jeff Seaton on March 20, 2023 with a brief designation and conclusory five-page report that provided none of the basic information required under Fed. R. Civ. P. 26(a)(2) for a designated expert, such as a statement of the basis and reasons for his opinions, an identification of the information he reviewed and relied upon, or a statement of his compensation. Seaton was subsequently deposed on his opinions and offered testimony that fundamentally undermined and limited his conclusions. Then, on August 9, 2023, two months after the close of discovery, Plaintiff supplemented Seaton's designation with a still-lacking disclosure identifying over 800 pages of newly designated documents supporting his opinions. Most significant in that "supplement" was a nine-page declaration dated July 6, 2023 that contained brand new opinions and statements directly and materially contradicting Seaton's sworn deposition testimony.

2.      Both disclosures of Seaton fail to comply with the requirements of Rule 26(a)(2) as set forth below. The new opinions and testimony of the August 9, 2023 supplemental designation are untimely, having been disclosed after the deadline for any discovery on them, and should be struck. Finally, Seaton's opinions, both new and old, are fundamentally lacking in substance and methodology such that his testimony should be excluded from trial in this matter.

### IV.    PROCEDURAL BACKGROUND

3.      Plaintiff served its Amended Initial Disclosures designating Jeff Seaton as a retained expert on March 20, 2023.[1] Depositors moved to strike Seaton's opinions on the scheduling order deadline of June 16, 2023.[2] Seaton was deposed on June 21, 2023, and 804 pages

---

[1] *See* Exhibit A, Plaintiff's Amended Initial Disclosures, at p. 3 (Appx. 003).

[2] Docs. 45-46, Depositors' Motion to Strike Jeff Seaton and Brief in Support. Due to a disagreement over whether an otherwise agreed motion to extend discovery deadlines would also

1

of documents purported to be his "file" were disclosed the day before. On July 7, 2023, Plaintiff responded to Depositors' Motion to Strike Seaton, attaching the nine-page declaration, new photographs, and other expert materials.[3] On August 9, 2023, Plaintiff supplemented Seaton's designation incorporating the declaration, 804 page "file" production, and numerous other documents.[4] The Court then referred all briefing to United States Magistrate Judge Rebecca Rutherford, who issued an Amended Scheduling Order allowing the parties to resubmit *Daubert* challenges by November 17, 2023.[5]

## V.    FACTUAL BACKGROUND

4.    This is a first-party insurance lawsuit concerning storm-related damage to Plaintiff's commercial property at 1515 E. Abrams Street in Arlington, Texas alleged to have occurred during an April 27, 2020 hailstorm.[6] That storm is estimated to have had .9" hail at the location, while a 2.3" estimated hail event occurred on June 5, 2018—after the roof at issue was installed but *before Depositors insured the property*.[7] Plaintiff invoked the policy's appraisal clause, and Depositors participated in appraisal under a reservation of rights based on its prior claim decision and questions concerning the extent and cause of the damage claimed. An appraisal award was issued for replacement of the roof which was contested by Depositors, and Plaintiff

---

need a corresponding extension of the trial date, Depositors was required to file its motion to strike prior to Seaton's deposition. *See generally* Docs. 37, 59 and 107 (Order at pp. 2-3).

[3] *See* Docs. 83, 86, Plaintiff's Response to Motion to Strike Seaton and Appendix in Support.

[4] Exhibit B, Plaintiff's Second Supplemental Disclosures, at pp. 3-4 of 7 (Appx. 015-016).

[5] *See* Doc. 126, Order, and Doc. 134, Amended Scheduling Order, at p. 2 of 4, ¶ 5(a).

[6] Doc. 18, Plaintiff's Second Amended Complaint, at p. 2 of 20, ¶ 7.

[7] *See* Exhibit C, CoreLogic Report, at p. 1 of 3 (Appx. 026).

sued, alleging breach of contract, violations of Texas Insurance Code Chapters 541 and 542, bad faith, and violations of the Texas Deceptive Trade Practices Act.[8]

5.      Plaintiff designated Jeff Seaton as a retained expert on March 20, 2023, providing a five-page report.[9] Plaintiff's designation stated only that "a true and correct copy of Mr. Seaton's expert report and resume containing his opinions and conclusions related to this matter are attached hereto as Exhibit A and incorporated herein by reference."[10] Seaton's report lacked basic information required under Rul 26(a)(2) such as a statement of his compensation, and offered the conclusory opinion that the TPO membrane of the roof needed to be replaced as a result of the April 27, 2020 hailstorm without any analysis or discussion of that roof membrane.[11]

6.      Seaton was deposed on June 21, 2023, confirming that his report was a "complete statement" of his opinions containing all facts and data he considered in reaching them.[12] Seaton testified that he never investigated other hail incidents that could have damaged the property outside the date of loss, and that determining a date of loss was not part of his analysis.[13] When presented with data from past storms outside the policy period—including storms with significantly larger hail—Seaton agreed that they could have contributed to the claimed roof

---

[8] Doc. 18, Plaintiff's Second Amended Complaint, pp. 9-15, ¶¶ 28-55

[9] *See* Exhibit A, Plaintiff's Amended Rule 26(a) Initial Disclosures, at p. 3 (Appx. 003); Exhibit D, Expert Report of Jeff Seaton (Appx. 029-033).

[10] Exhibit A, Plaintiff's Amended Rule 26(a) Initial Disclosures, at p. 3 (Appx. 003).

[11] Exhibit D, Expert Report of Jeff Seaton, at p. 5, ¶ 6 (Appx. 033).

[12] Exhibit E, Deposition of Jeff Seaton, at p. 34:4-12 (Appx. 042).

[13] *See id.* at pp. 59:13-22, 61:4-15 (Appx. 048, 049) ("Q. Do you think it would be important … to rule out the possibility that it could have occurred on other dates? A. Again, *I wasn't there to investigate which date this happened*. I was just there to see if the roof had been compromised by hail damage and needed replacement. And the date that I was given for the storm was April 27th, 2020." (emphasis added)).

damage.[14] Seaton admitted that he made no attempt to segregate damages between storms on the alleged April 27, 2020 date of loss and the larger storm occurring in June 2018.[15] With respect to the 804 pages of documents produced prior to his deposition but not listed in his disclosure or report, Seaton testified unequivocally that he had not reviewed that material at the time of his report.[16]

7.    After Seaton's deposition—and after the close of discovery on June 2, 2023—Plaintiff filed a declaration by Seaton that materially contradicted his sworn deposition testimony. For example, where he previously testified that he had not investigated other hail incidents and that the larger June 2018 storm could have caused some of the damage he saw, Seaton now testified that he had determined the June 2018 storm "did not damage the roof" and that "I can exclude any prior hailstorm."[17] Plaintiff then attempted to cure the deficiencies of its original expert disclosure and boot-strap Seaton's declaration positions into its expert disclosures by filing an untimely supplemental expert disclosure on August 9, 2023, over *two months* after discovery had closed.[18]

---

[14] *See id.* at pp. 70:3-8 (Appx. 051) (Q: "So the hail dents that you believe you saw . . . could have occurred on the June 5th, 2018 hail event indicated at 2.3 inches; is that correct?" A: "Some of that could have occurred on that date."), 90:12-15 (Appx. 056) (Q: "[W]ould you agree that that damage could have occurred on some of these other dates?" A: "I do agree that some damage could have occurred there . . . ."), 96:12-16 (Appx. 057) ("So some damage could have occurred on any of those hail dates.").

[15] *See id.* at p. 71:8-13 (Appx. 051) (Q: "Have you attempted at all, in this case, to segregate what damage occurred from the larger June 5th, 2018 event from the damage that you believe occurred on April 27th of 2020?" A: "No, that would be very difficult to do and no, I have not tried to do that."), 72:18-21 (Appx. 051) (Q: "[C]an you separate that from what may have occurred in June 2018, that larger event, from what you believe occurred in April of 2020?" A: "No.").

[16] *Id.* at p. 34:13-22 (Appx. 042); *see also* Exhibit F, July 6, 2023 Declaration of Jeff Seaton at p. 2, ¶ 6 (Appx. 071) ("Since my expert report was written on February 24, 2023, I have received and reviewed additional documents identified as Seaton 001 to 0804.").

[17] Exhibit F, July 6, 2023 Declaration of Jeff Seaton at p. 2, ¶ 7 and p. 5, ¶ 8 (Appx. 071, 074).

[18] *See* Exhibit B, Plaintiff's Second Supplemental Rule 26(a) Initial and Expert Disclosures, at pp. 3-4 of 7 (Appx. 015-016); Doc. 14, Scheduling Order, at p. 4 of 11, ¶ 7.

## VI.    <u>STANDARD OF REVIEW</u>

9.    Expert testimony is admissible only if (1) it will "help the trier of fact to understand the evidence or to determine a fact in issue," (2) is "based upon sufficient facts or data," and (3) is "the product of reliable principles and methods" which (4) has been reliably applied "to the facts of the case."[19] The evidence should be admitted if it "rests on reliable foundation and is relevant."[20] Rule 702 and *Daubert* "establish that federal trial judges are to serve as gatekeepers by excluding the testimony of experts offering 'junk science.'"[21]

10.    A court's gatekeeping role is critical because "expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it."[22] Thus, in analyzing proffered expert testimony, district courts must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[23] The proponent of the expert has the burden of establishing the admissibility of the expert's testimony under Rule 702 by a preponderance of the evidence.[24] The district court "has broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion."[25]

---

[19] Fed. R. Evid. 702.

[20] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).

[21] *Cromwell v. Wal-Mart Stores, Inc.*, 46 F. App'x 733 (5th Cir. 2002).

[22] *Daubert*, 509 U.S. at 596.

[23] *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *see Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010) (excluding expert testimony where there existed "too great an analytical gap between the data and the opinion proffered").

[24] *See Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002).

[25] *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 354 (5th Cir. 2007).

11.     As part of this inquiry, the court must determine whether an expert's testimony is reliable.[26] Pertinent considerations in assessing reliability include whether the theory or technique has been tested or subjected to peer review and publication, the known or potential rate of error of the method used, the existence and maintenance of controlling standards, and whether the theory or method is generally accepted by the scientific community.[27] Although flexible, "[t]he reliability prong mandates that expert opinion 'be grounded in the methods and procedures of science and … be more than unsupported speculation or subjective belief.'"[28] "The expert's assurances that he has utilized generally accepted scientific methodology is insufficient."[29]

12.     A court must also determine whether the proffered expert's opinions are relevant.[30] To be relevant, the testimony must "help the trier of fact to understand the evidence or to determine a fact in issue."[31] "To be 'helpful' under Rule 702, the evidence must possess validity when applied to the pertinent factual inquiry."[32] "Expert testimony which does not relate to any issue in the case is not relevant, and ergo, non-helpful."[33] Further, testimony "which would merely allow the witness to tell the jury what result to reach are not permitted."[34]

---

[26] *Daubert*, 509 U.S. at 590.

[27] *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668-69 (5th Cir. 1999) (citing *Daubert*, 509 U.S. at 593-94).

[28] *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis*, 174 F.3d at 668); *see Knight*, 482 F.3d at 354.

[29] *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

[30] *See Daubert*, 509 U.S. at 591-93.

[31] Fed. R. Evid. 702(a); *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 694 (5th Cir. 2012).

[32] *United States v. Posado*, 57 F.3d 428, 433 (5th Cir. 1995).

[33] *Daubert*, 509 U.S. at 591; *see Roman*, 691 F.3d at 694; *see also, e.g.*, *Knight*, 482 F.3d at 355 (affirming the district court's exclusion of testimony where the data relied on by the expert "failed to provide a 'relevant' link with the facts at issue").

[34] *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

## VII.    ARGUMENT & AUTHORITIES

**A.    Plaintiff's designations of Seaton do not comply with Rule 26.**

    *i.    Seaton's report failed to provide a basis for his opinions on damage to the roof membrane and the date damage occurred, and subsequent opinions on possible "microfractures" were not timely disclosed.*

    13.    Under Rule 26, a party must disclose any retained expert it plans to use at trial, along with a report that contains the basis and reasons for the expert's opinions, the facts or data considered in forming them, any related exhibits, the witness's qualifications, a list of previous cases in which the witness has testified, and a statement of compensation.[35] "A party must make these disclosures at the times and in the sequence that the court orders."[36]

    14.    Here, the Court's Scheduling Order required Plaintiff to make its expert disclosures by March 6, 2023 and set the discovery deadline at June 2, 2023.[37] Plaintiff submitted Amended Initial Disclosures on March 20, 2023, designating Seaton as a retained expert.[38] Seaton's accompanying report contained spare descriptions of his observations of the property and review of one weather report regarding the April 27, 2020 storm before offering the conclusory statement, without analysis, that "[a]s a result of the April 27, 2020, hailstorm the integrity of the roof membrane has been compromised" and "the TPO membrane needs replacement."[39] But Seaton's report never explains how or why the membrane was compromised.[40] Nothing in the report addresses the membrane or how it was allegedly damaged, and no other potential storm dates were

---

[35] Fed. R. Civ. P. 26(a)(2)(A)-(B).

[36] *Id.* R. 26(a)(2)(D).

[37] Doc. 14, Scheduling Order, at p. 3-4 of 11, ¶¶ 6(a), 7. The Court's recent Amended Scheduling Order did not change these deadlines. *See* Doc. 134, Amended Scheduling Order.

[38] Exhibit A, Plaintiff's Amended Rule 26(a) Initial Disclosures, at p. 3 (Appx. 003).

[39] *See* Exhibit D, Expert Report of Jeff Seaton, at pp. 4-5 (Appx. 032-033).

[40] *See id.*

considered. Seaton's report simply fails to provide the basis and reasons for his opinions about the alleged damage to the TPO roof membrane and the date it occurred, in violation of Rule 26(a)(2)(B)(i).

15.    During Seaton's deposition, the difference between the roof membrane (the watertight barrier) and the underlying ISO insulation board under the membrane (not the watertight barrier) were discussed.[41] Damage to the underlying ISO board is not damage to the roof membrane. Seaton then offered the previously undisclosed opinion that the TPO membrane *may* have suffered "microfractures" or "pinholes" that allow water penetration, although he concedes he failed to disclose any conclusions on microfractures or pinholes in his report and he in fact could not ascertain if any microfractures or pinholes actually exist.[42] Regardless, his report contains no such opinions in violation of Rule 26(a)(2)(B)(i).[43]

16.    The requirement that an expert report provide the basis and reasons for the expert's opinion "'is intended to reduce, or possibly even to eliminate, the need to depose experts—a plain indication that the report should stand on its own.'"[44] When a party fails to disclose the basis for its expert's opinions or other information required under Rule 26, "the party is not allowed to use

---

[41] Exhibit E, Deposition of Jeff Seaton, at p. 72:5-12 (Appx. 051) ("Q. You found dents to the iso board that's underneath the TPO membrane, correct? A. Correct. Q. All right. And you believe that there are fractures in the actual TPO membrane as well? A. Yes, I believe that there is pinhole or microfractures in the membrane . . . ."); s*ee also id.* at pp. 124:18-22, 125:6-18 (Appx. 064-065).

[42] *Id.* at p. 126:3-16 (Appx. 065) ("Q. You stated a couple of times earlier that you believe that there is microfractures or – what was the other word you were using? A. Pinholes. Q. Pinholes, thank you. You stated a couple of times microfractures or pinholes in this. Are those words, microfracture or pinholes, anywhere in this report? A. No, they are not. Q. And I think we talked about it earlier, you haven't actually determined that there are microfractures or pinholes present in this TPO roof membrane, correct? A. Correct."); s*ee also id.* at pp. 27:1-6 (Appx. 040), 52:7-53:5 (Appx. 046-047).

[43] *See* Exhibit D, Expert Report of Jeff Seaton (Appx. 029-033).

[44] *Kozak v. Medtronic, Inc.*, 512 F. Supp. 2d 913, 915 (S.D. Tex. 2007) (quoting *Nilssen v. Motorola, Inc.*, No. 93 C 6333, 1998 U.S. Dist. LEXIS 19161, at *7 (N.D. Ill. Nov. 30, 1998)).

that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[45]

17.     Here, Seaton's report contained no explanation of the requisite basis and reasons for his opinions, including his conclusion that the roof membrane was compromised and needed replacement. Any attempt at such an explanation came only *after* the close of discovery and Rule 26 expert disclosures deadline, through untimely "supplemental" disclosures and accompanying documents.[46] Similarly, Seaton's previously undisclosed deposition opinions about possible "pinholes" or "microfractures" were admittedly not disclosed in his report.[47] His report thus does not "'stand on its own.'"[48]

18.     Plaintiff's deficient expert disclosure is also not substantially justified or harmless.[49] In making this determination, courts consider: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose."[50] "A misunderstanding of the law does not equate to a substantial justification for failing to comply with the disclosure deadline."[51]

---

[45] Fed. R. Civ. P. 37(c)(1).

[46] Exhibit B, Plaintiff's Second Supplemental Disclosures, at pp. 3-4 of 7 (Appx. 015-016); Exhibit F, July 6, 2023 Declaration of Jeff Seaton (Appx. 070-178).

[47] Exhibit E, Deposition of Jeff Seaton, at p. 126:3-16 (Appx. 065); s*ee also id.* at pp. 27:1-6 (Appx. 040), 52:7-53:5 (Appx. 046-047); Exhibit D, Expert Report of Jeff Seaton (Appx. 029-033).

[48] *Kozak*, 512 F. Supp. 2d at 915.

[49] *See* Fed. R. Civ. P. 37(c)(1) (if party fails to disclose information under Rule 26(a), then the party may not use it for a motion, hearing, or trial unless the failure was substantially justified or harmless.)

[50] *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

[51] *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004).

19.     After Plaintiff tried to untimely supplement the information missing from its initial expert disclosure and Seaton's report, Seaton explained that his report was missing much of this information "because [he] did not know that [he] needed to provide such information in the expert report."[52] This is an insufficient justification; particularly where Plaintiff was represented by multiple counsel with thirty-plus years of experience in federal practice who seek to recover fees in this matter at rates of $500-$550 per hour and who billed over ten hours for drafting and review of that very expert report.[53] Depositors was prejudiced by the late disclosure of opinions in Seaton's deposition because it came after the close of discovery, preventing any attempt to investigate or vet the claimed basis for those opinions. Depositors has no opportunity to develop a defense to Seaton's claims of microfractures and pinholes when it first learns of those opinions weeks after the close of discovery.

20.     Plaintiff's disclosure of Seaton fails to provide any basis or reasons for his opinions. The later supplemental disclosure attempting to fill in this and other gaps was untimely and not substantially justified or harmless. This Court should therefore strike Seaton's opinions.

*ii.   The new opinions and testimony of the August 9, 2023 supplemental designation are untimely.*

21.     Rather than rely on Seaton's expert report, Plaintiff felt the need to submit untimely new opinions and testimony in an August 9, 2023 supplemental designation, which incorporated Seaton's untimely declaration dated July 6, 2023, and identified the 800-plus page file production produced the day before his June 21, 2023 deposition which Seaton had not previously reviewed.[54]

---

[52] Exhibit F, July 6, 2023 Declaration of Jeff Seaton, at p. 8, ¶ 14 (Appx. 077).

[53] *See* Plaintiff's May 31, 2023 Supplemental Expert Disclosure, Doc. 32 p. 3 of 5 and Doc. 32-1 pp. 20 and 32 of 38.

[54] *See* Exhibit B, Plaintiff's Second Supplemental Disclosures, at pp. 3-4 (Appx. 015-016); Exhibit F, July 6, 2023 Declaration of Jeff Seaton at p. 2, ¶ 6 (Appx. 071).

22.    Rule 26 requires experts to timely disclose their opinions and the basis for them, and failing to do so justifies excluding them.[55] "Courts may exclude expert testimony that is materially different from the expert's Rule 26 report when that testimony is offered late."[56] Likewise, attempting to supplement an expert report with a declaration filed after the expert report deadline violates Rules 26(a)(2)(D) and 37(c)(1).[57] Filing such a declaration also implicitly concedes that the initial report and designation were deficient.[58]

23.    Here, Plaintiff attempted to offer expert testimony in its August 9, 2023 supplemental disclosures, filed long after the deadline for expert designations and the close of discovery.[59] Aside from being untimely, these new opinions are materially different from Seaton's Rule 26 report and sworn deposition testimony. As discussed above, Seaton's brief report contains no explanation behind his conclusion, which he all but conceded in his deposition.[60] The untimely new opinions in his declaration also materially contradict his sworn deposition testimony on multiple points, including the critical issues of segregation of damages and the fundamental scope of his report.

---

[55] *See Norris v. Kawasaki Motors Corp., USA*, No. H-16-2424, 2018 U.S. Dist. LEXIS 131201, at *15 (S.D. Tex. Aug. 6, 2018); *see also Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990) ("The importance of such proposed testimony cannot singularly override the enforcement of local rules and scheduling orders.").

[56] *Norris*, 2018 U.S. Dist. LEXIS 131201, at *15.

[57] *In re Aries Marine Corp.*, No. 19-10850; 19-13138, 2023 U.S. Dist. LEXIS 8304, at *11 (E.D. La. Jan. 17, 2023).

[58] *See Fosberg v. Tricam Indus.*, No. 4:20-CV-126-A, 2021 U.S. Dist. LEXIS 25689, at *4 (N.D. Tex. Feb. 10, 2021); *Brosius v. Home Depot Inc.*, No. 6:20-cv-1136-ACC-DCI, 2022 U.S. Dist. LEXIS 22839, at *34-35 (M.D. Fla. Feb. 7, 2022).

[59] Doc. 14, Scheduling Order, at p. 3-4 of 11, ¶¶ 6(a), 7.

[60] *See* Exhibit E, Deposition of Jeff Seaton, at p. 126:3-16 (Appx. 065); s*ee also id.* at pp. 27:1-6 (Appx. 040), 52:7-53:5 (Appx. 046-047).

For example:

| Seaton's Deposition Testimony | Seaton's Untimely Declaration |
|---|---|
| "No, [segregating damages] would be very difficult to do and no, I have not tried to do that."[61]<br><br>Q. "[C]an you separate that from what may have occurred in June 2018, that larger event, from what you believe occurred in April of 2020?" A. "No."[62] | "I can 'segregate' the issue of the roof replacement."[63]<br><br>"I did segregate between damages to the 1515 Abram Property roof specifically caused by the April 27, 2020 hailstorm and all other prior weather or other events."[64] |
| "I wasn't there to investigate which date this happened."[65]<br><br>"Yeah, I don't think it was important [to rule out prior storms.]"[66] | Stating he was hired to determine whether any damage "was caused by a specific hailstorm (April 27, 2020), caused by prior hailstorms and/or any other cause or incident, or a combination thereof."[67] |
| Q. "[D]id you do anything to rule out the possibility that the dents to the iso board that you observed in your section, could have occurred on one of these other dates that happened prior to your inspection?" A. "No, there's not any way to rule out—I mean they're not date stamped, so you can't rule out the date."[68] | "[S]eeing the damage to the polyiso board and ceiling tiles in real time during my inspection . . . allowed me to determine that the damage to the Abram roof and HVAC units was caused by the April 27, 2023 [*sic*] hailstorm[.]"[69] |
| "I do agree that some damage could have occurred there [on other dates.]"[70] | "The evidence based conclusion is that the April 27, 2020 hailstorm is the sole cause of the need for the roof replacement."[72] |

[61] Exhibit E, Deposition of Jeff Seaton, at p. 71:8-13 (Appx. 051).

[62] *Id.* at p. 72:18-22 (Appx. 051).

[63] Exhibit F, July 6, 2023 Declaration of Jeff Seaton, at p. 7, ¶ 11 (Appx. 076).

[64] *Id.* at pp. 2-3, ¶ 7 (Appx. 072).

[65] Exhibit E, Deposition of Jeff Seaton, at p. 61:10-11 (Appx. 049).

[66] *Id.* at p. 62:1-2 (Appx. 049).

[67] Exhibit F, July 6, 2023 Declaration of Jeff Seaton, at p. 1, ¶ 2 (Appx. 070).

[68] Exhibit E, Deposition of Jeff Seaton, at p. 66:2-9 (Appx. 050).

[69] Exhibit F, July 6, 2023 Declaration of Jeff Seaton, at p. 7, ¶ 12 (Appx. 076).

[70] Exhibit E, Deposition of Jeff Seaton, at p. 90:14-15 (Appx. 056).

[72] Exhibit F, July 6, 2023 Declaration of Jeff Seaton, at p. 3, ¶ 7 (Appx. 072).

| "So some damage could have occurred on any of those [prior] hail dates."[71] | |

24.    Plaintiff's supplemental disclosures are untimely and materially contradict Seaton's earlier testimony. Any claimed importance of this new evidence does not justify ignoring this Court's scheduling orders and deadlines.[73] Nor can Plaintiff justify its failure to include such important opinions in its original disclosure claiming ignorance or mistake given the scope of drafting and review undertaken by its own attorneys.[74] Depositors has been prejudiced by the late disclosure. As the declaration and supplemental designation explicitly contradict Seaton's sworn testimony on key issues in this case such as the scope of his review, other weather events, when damage occurred and whether he could segregate preexisting damages,[75] Depositors must face and defend multiple conflicting positions while having been provided no opportunity to investigate or refute the new opinions during the discovery period. Accordingly, this Court should strike the untimely disclosed opinions, which include his July 6, 2023 declaration, the June 2023 800-plus document production, and other information listed in the untimely August 9, 2023 supplemental disclosures.

*iii.   Seaton's designation failed to include other basic information required by Rule 26(a)(2)(B).*

25.    Rule 26(a)(2)(B) requires a disclosure of a retained expert to be accompanied by a report containing: "(i) a complete statement of all opinions the witness will express and the basis

---

[71] *Id.* at p. 96:12-13 (Appx. 057).

[73] *See Geiserman*, 893 F.2d at 792.

[74] *See* Plaintiff's May 31, 2023 Supplemental Expert Disclosure, expert report billing for March 15, 16 and 20 at Doc. 32-1 pp. 32 of 38.

[75] *Compare* Exhibit E, Deposition of Jeff Seaton, at 61:10-11 (Appx. 049) *with* Exhibit F, July 6, 2023 Declaration of Jeff Seaton, at p. 1, ¶ 2 (Appx. 070); Exhibit E, Deposition of Jeff Seaton, at 71:8-13 (Appx. 051) *with* Exhibit F, July 6, 2023 Declaration of Jeff Seaton, at p. 7, ¶ 11 (Appx. 076).

and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of compensation to be paid for the study and testimony in the case."[76] "Litigants in federal court are entitled to the disclosures that are required to be made under Rule 26(a)(2)(B), and it is not incumbent on the opposing party to investigate or ferret out that information as best as it can through deposition or other means of discovery at the expense of its client.[77] Besides the missing basis for his opinions discussed above, Seaton's report also failed to include other required information, such as a statement of compensation, the documents and information he reviewed, a list of any previous cases in which he had testified, or a list of any publications authored in the last 10 years (or statement that none exist).[78] These omissions further highlight the overall defective nature of Plaintiff's disclosure of Seaton including Seaton's Rule 26 report.

**B.    Seaton's opinions are unreliable because his methodology admittedly failed to consider any data beyond the alleged date of loss and failed to segregate damages.**

26.    To be reliable, expert opinions must be "grounded in the methods and procedures of science"[79] A court need not "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."[80] In the first-party property insurance dispute context, failing to

---

[76] Fed. R. Civ. P. 26(a)(2)(B).

[77] *State Auto. Mut. Ins. Co. v. Freehold Mgmt.*, No. 3:16-CV-2255-L, 2019 U.S. Dist. LEXIS 55052, *78 (N.D. Tex. Mar. 31, 2019).

[78] *See* Exhibit D, Expert Report of Jeff Seaton (Appx. 029-033).

[79] *Johnson*, 685 F.3d at 459.

[80] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

account for or examine other possible contributing weather events as a source of damage is an insufficiently reliable methodology under Rule 702 and *Daubert*.[81]

27.     Here, Seaton repeatedly admitted in his deposition that he did not examine *any* dates or weather events outside the date of loss Plaintiff provided him and that other storms outside the policy period could have contributed to the alleged damage he observed.[82] He even testified that such a review was beyond the scope of his task.[83] When specifically asked about his methodology, he testified that it did not include verifying any facts provided to him by Plaintiff regarding prior repairs or the date of loss.[84]

28.     Seaton also admittedly failed to segregate damages. "Because an insured can only recover for covered events, the burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured . . . carries the burden of proof."[85] "'It is essential that the insured produce evidence which will afford a reasonable basis for estimating the amount

---

[81] *See Hilltop Church of the Nazarene v. Church Mut. Ins. Co.*, No. 6-21-cv-00322, 2022 U.S. Dist. LEXIS 229148, at *4-5 (E.D. Tex. Dec. 20, 2022) (J. Campbell Barker) ("To begin with, the expert's methodology is unreliable because it does not include a full search of the storm database. The expert toured plaintiff's property in February 2022 and witnessed what is claimed as hail damage. Yet the expert's storm-database search examined only storms in 2019. It did not search 2020. It did not search 2021 or January 2022. Nor did it search before 2019. That methodology leaves, at a minimum, a 25-month gap of unexamined weather events…. A reliable method would have examined those remaining months to identify any other storm and opine on whether it could be excluded as causing the damage. To survive a Daubert inquiry, an expert's methodology must logically account for such a gap.") (available at Appx. 079-084)

[82] *See, e.g.*, Exhibit E, Deposition of Jeff Seaton, at pp. 56:18-21 (Appx. 047) (Q. "And you would also agree that you only looked at weather data from the specific date that was provided to you by the building owner, correct?" A. "Correct . . . ."), 66:14-18 (Appx. 050), 70:3-7 (Appx. 051) ("Q. So the hail dents that you believe you saw to the iso board, those could have occurred on the June 5th, 2018 hail event indicated at 2.3 inches, is that correct?" A. "Some of that could have occurred on that date.")

[83] *Id.* at p. 61:10-11 (Appx. 049) ("Again, I wasn't there to investigate which date this happened.").

[84] *See id.* at p. 130:4-5, 130:9-17 (Appx. 066).

[85] *Garcia v. State Farm Lloyds*, 629 F. Supp. 3d 504, 508 (N.D. Tex. 2022).

of damage or the proportionate part of damage caused by a risk covered by the insurance policy.'"[86]

Failure to segregate damages bars recovery.[87]

29.    Seaton freely and unambiguously testified that he did not—and could not—segregate damages. For example, when asked "[h]ave you attempted at all, in this case, to segregate what damage occurred from the larger June 5th, 2018 event from the damage that you believe occurred on April 27th of 2020?" Seaton answered, "No, that would be very difficult to do and no, I have not tried to do that."[88]

30.    Because Seaton failed to examine any date besides the date of loss Plaintiff provided him and failed to even attempt to segregate damages, his methodology is unreliable and this Court should strike his resulting opinions as inadmissible under Rule 702 and *Daubert*.

**C.    Seaton's opinions are irrelevant because they do not help the trier of fact understand the evidence or determine a fact in issue.**

31.    A central issue in this insurance dispute is whether Plaintiff sustained roof damage during the policy period—*i.e.*, on the claimed April 27, 2020 date of loss.[89] Seaton's failure to consider any other possible contributing dates of loss or attempt to segregate damages with other larger storms renders his opinions unhelpful to a jury in determining whether any damage to Plaintiff's roof occurred during the policy period.

---

[86] *Id.* (quoting *Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 163 (Tex. 1971)).

[87] *Id.*

[88] Exhibit E, Deposition of Jeff Seaton, at p. 71:8-13 (Appx. 051); *see also id.* at p. 72:18-22 (Appx. 051) (Q. "[C]an you separate that from what may have occurred in June 2018, that larger event, from what you believe occurred in April of 2020?" A. "No.").

[89] *See Michaels v. Avitech, Inc.*, 202 F.3d 746, 753 (5th Cir. 2000) (noting that in the *Daubert* context, excluding alternative causes is a necessary consideration in determining the cause of damage at issue).

32.     In one conclusory sentence, Seaton's report pinpoints all alleged damage to a storm on April 27, 2020.[90] However, in his deposition, Seaton repeatedly clarified that his analysis did not include determining dates of loss; rather, he simply took the date Plaintiff gave him as truth and then wrote a report attributing perceived damage to that date, without any verification.[91] And when presented with past hailstorms at Plaintiff's property, including a June 2018 storm with significantly larger hail than the storm on the date of loss, Seaton agreed that the prior storms could have contributed to the damage he observed.[92] As discussed above, Seaton's report also provided no basis for his opinions or link between the facts he observed and his conclusions.[93] His opinions therefore cannot assist a jury in determining whether any damage occurred on the claimed date of loss or in segregating any such damage with other storms.

33.     Seaton's opinions are unreliable and will not assist the jury in understanding the evidence or determining a fact in issue. As a result, this Court should strike them as inadmissible under Rule 702 and *Daubert*.

## VIII.    <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Defendant Depositors Insurance Company respectfully prays that the Court grant this Motion to Strike Plaintiff's Retained Expert Jeff Seaton and exclude Seaton's opinions and testimony from trial. In the alternative, Depositors respectfully

---

[90] Exhibit D, Report of Jeff Seaton, at p. 5, ¶ 6 (Appx. 033).

[91] *See, e.g.*, Ex. E, Deposition of Jeff Seaton, at pp. 59:23-60:1 (Appx. 048) ("My job was to assess this roof for hail damage and integrity related to the storm that happened in April of 2020"), 61:10-15 (Appx. 049) ("Again, *I wasn't there to investigate which date this happened*. I was just there to see if the roof had been compromised by hail damage and needed replacement. And the date that I was given for the storm was April 27th, 2020." (emphasis added)).

[92] *See id.* at pp. 70:3-8 (Appx. 051), 90:12-15 (Appx. 056), 96:12-16 (Appx. 057) ("So some damage could have occurred on any of those hail dates.").

[93] *See* Exhibit D, Expert Report of Jeff Seaton (Appx. 029-033).

asks this Court to limit Seaton's testimony to his Rule 26 report, striking as untimely the supplemental disclosures and incorporated declaration, production, and other untimely disclosed opinions. Depositors further prays this Court grant all such other and further relief to which it may show itself justly to be entitled.

Respectfully submitted,

*/s/ Patrick M. Kemp*
Patrick M. Kemp
Texas Bar No. 24043751
pkemp@smsm.com
Robert G. Wall
Texas Bar No. 24072411
rwall@smsm.com
Timothy A. Phillips
Texas Bar No. 24124984
tphillips@smsm.com
Segal McCambridge Singer & Mahoney
100 Congress Avenue, Suite 800
Austin, Texas 78701
(512) 476-7834
(512) 476-7832 – Facsimile

**ATTORNEYS FOR DEFENDANT**
**DEPOSITORS INSURANCE COMPANY**

<u>**CERTIFICATE OF CONFERENCE**</u>

I certify that I conferred via email with Brian Shields, counsel for Plaintiff, on November 17th, 2023, regarding this motion, and the relief requested herein was opposed by Plaintiff's counsel.

*/s/ Timothy A Phillips*
Timothy A Phillips

## <u>CERTIFICATE OF SERVICE</u>

      This is to certify that a true and correct copy of the foregoing instrument has been served electronically via CM/ECF this the 17th day of November, 2023 to:

      James D. Shields
      Bart F. Higgins
      Brian S. Shields
      Shields Legal Group, P.C.
      16400 Dallas Parkway, Suite 300
      Dallas, Texas 75248
      Jshields@shieldslegal.com
      bhiggins@shieldslegal.com
      bshields@shieldslegal.com

                                     */s/ Patrick M. Kemp*
                                       Patrick M. Kemp