IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HWY 67 DEALERSHIP JV, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:22-cv-00784-L |
| | § | |
| DEPOSITORS INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

After hail damaged two of HWY 67 Dealership JV's (Highway 67) commercial properties, it filed a claim with its insurer, Depositors Insurance Company d/b/a Nationwide Insurance Company ("Nationwide" or "Depositors"). Dissatisfied with Nationwide's adjustment of the claim, Highway 67 invoked appraisal under the insurance policy. After Nationwide failed to pay the full amount of the appraisal award, Highway 67 filed this action alleging breach of contract as well as extracontractual claims, including violations of the Texas Prompt Payment of Claims Act (TPPCA), Tex. Ins. Code § 542.051, et seq.

The parties have filed cross-motions for summary judgment on Highway 67's breach of contract and TPPCA claims. In addition, Nationwide moves for summary judgment on all remaining claims and, alternatively, moves to set aside the appraisal award. Highway 67 moves for partial summary judgment on Nationwide's Affirmative Defense No. 17.

For the reasons that follow, the undersigned recommends that the District Judge GRANT in part and DENY in part Plaintiff's Amended Motion for Partial Summary Judgment (ECF No. 135) and DENY Defendant's Renewed Motion for Summary Judgment and, in the Alternative, Motion to Set Aside Appraisal Award (ECF No. 141). Further, the undersigned DENIES Defendant Depositors Insurance Company's Renewed Motion to Strike or Limit Plaintiff's Retained Expert Jeff Seaton (ECF No. 138).[1]

## Factual and Procedural Background

The Court now sets forth the facts in accordance with the summary judgment standard summarized in the next section. The facts are undisputed unless otherwise noted.

### A. <u>The Policy</u>

Nationwide insured two of Highway 67's commercial properties in Tarrant County, Texas, one at 6601 Blvd. 26, North Richland Hills, Texas (the "North Richland Hills Property") and the other at 1515 E. Abram Street, Arlington, Texas (the "Arlington Property") under policy number ACP CPPD 3018900153 (the "Policy"). App. in Support of Pl.'s Am. Mot. for Partial Summ. J. (Pl.'s Summ. J. App.), ECF No. 137-1 at 27-29.[2] The Policy provided that Nationwide "will pay for

---

[1] The undersigned has the authority to dispose of the Motion to Strike after the District Judge referred this case for pretrial management. ECF No. 126; 28 U.S.C. § 636(b)(1)(B).

[2] Citations to the record refer to the CM/ECF page number at the top of each page rather than page numbers at the bottom of each filing.

direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." *Id.* at 37. Under the Policy, hail damage was a covered cause of loss as it was not otherwise excluded. *Id.* at 75. The Policy was effective from September 27, 2019, to September 27, 2020. *Id.* at 27.

The Policy's appraisal provision outlined the procedure to be followed in the event the parties disputed the amount of Highway 67's claimed loss:

APPRAISAL

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and will notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of the loss. Each party will:

a. Pay its chosen appraiser; and
b. Bear the other expenses of appraisal and umpire equally.

If there is an appraisal:

* * *
a. You will still retain your right to being a legal action against us []; and
b. We will still retain our right to deny the claim.

*Id.* at 65. The Policy also provided:

We will pay for covered loss or damage within 5 business days after:

      a.  We have notified you that payment of the claim or part of the
          claim will be made and have reached agreement with you on
          the amount of loss; or
      b.  An appraisal award has been made.

*Id.* at 66.

## B. <u>The Insurance Claim and Appraisal</u>

After a storm on April 27, 2020, Highway 67's public adjuster, Matt Movalson of Focus Claims, filed a claim for hail damage on May 21, 2020, with a loss date of April 27, 2020, for the North Richland Hills Property and added the Arlington Property to the claim on June 16, 2020. *Id.* at 113-18. On May 29, 2020, Nationwide had the North Richland Hills Property inspected. *Id.* at 121-23. It determined that no exclusion applied to the claim, paid Highway 67 $39,077.18 for covered losses, and by letter dated June 2, 2020, explained that the payment was the "actual cash value of property covered by your policy less the deductible." *Id.* at 125-28.[3]

With respect to the Arlington Property, Nationwide's claim adjuster Javier Rico acknowledged the claim on June 16, 2020, the day it was received. App. to Def.'s Mot. for Summ. J. (Def.'s Summ. J. App.), ECF No. 143-1 at 40. He noted the Policy was in force at the time of loss, that hail is a covered loss under the Policy, and that no exclusions applied. *Id.* at 128. On June 17, 2020, Rico ran a CoreLogic

---

[3] Although Highway 67 originally brought claims relating to both properties, on March 8, 2023, it stipulated that it is no longer seeking damages related to the NRH Property. *See* Def.'s Summ. J. App., ECF No. 143-1 at 1. The Court, however, will continue to reference the NRH Property when factually relevant to its disposition of the pending motions.

weather verification report that showed 0.9" hail on April 27, 2020, and 2.3" hail on June 5, 2018, a date outside the policy period. *Id.* at 141-43 (CoreLogic Report).

Rico retained Ladder Now to inspect the property and prepare a report. *Id.* at 144-91 (Ladder Now Report). The Ladder Now Report noted hail damage to the HVAC condenser fins, top panels, and large exhaust vents and metal panels on the right and rear of the Arlington Property. *Id.* After reviewing the Ladder Now Report, Rico prepared an estimate for covered damages dated June 19, 2020, that totaled $9,020.39 replacement cash value (RCV) and $8,142.59 actual cash value (ACV). *Id.* at 201 (First Estimate). Rico e-mailed Movalson the estimate, summarizing the damage Ladder Now found and noting that the inspection did not reveal any storm-related damage to the roof's thermoplastic polyolefin (TPO) single-ply membrane. *Id.* at 203. Rico stated he would retain a HVAC consultant to evaluate rooftop HVAC damage. *Id.* He also noted that because the current covered damages were within the Policy's hail/wind deductible, no payment would be made on that location. *Id.* (Claim Adjustment Letter 1).

Subsequently, Rico retained HVAC Investigators (HVACi), who inspected the property and prepared a report dated June 25, 2020. *Id.* at 204-309 (HVACi Report). HVACi determined ten of the twelve systems were damaged and all ten of them could be repaired. *Id.* at 205-09. The other two units did not sustain hail damage. *Id.* at 207. HVACi determined the cost to repair the units was $31,495.73 RCV and $17,646.59 ACV. *Id.* at 205. Rico revised his estimate on June 25, 2020, adding the damage and cost of repair identified by HVACi. *Id.* at 315-23. The new

estimate totaled $40,516.12 RCV and $39,638.32 ACV. *Id.* at 319 (Estimate No. 2). Nationwide's payment summary reflects that, after applying the deductible, it issued payment in the amount of $18,758.32 on June 26, 2020. *Id.* at 324. On June 26, 2020, Rico noted in the activity log that he e-mailed Movalson a copy of the revised estimate and "[e]xplained estimate and ACV payment of $18,758.32." *Id.* at 123. The summary judgment record, however, contains no written document evidencing that Rico communicated Estimate No. 2 to Highway 67 or its agents and contains no claim adjustment letter.

Believing Nationwide had underpaid the claim, on July 27, 2020, Highway 67 invoked its right to an appraisal in accordance with the Policy. Pl.'s Summ. J. App., ECF No. 137-1 at 133-35. Highway 67 named Douglas Laczynski as its appraiser and Nationwide named Brett Lochridge as its appraiser. *Id.* at 133-41. On August 3, 2020, after receipt of the appraisal request, Nationwide informed Highway 67 that it would participate in the appraisal, subject to remaining coverage issues, and stated that it reserved the right to deny the claim as afforded under the Policy. Def.'s Summ. J. App., ECF No. 143-1 at 329-31.

Before the appraisal process was complete, Nationwide retained Timothy Marshall, P.E., of HAAG Engineering Co. to inspect the Arlington Property on August 7, 2020, and he prepared a report dated August 11, 2020, that concluded hail did not damage or fracture the single-ply roof membrane, damage to metal items on the roof indicate the damage was caused by prior hail events, and the largest hail that fell at the property was 2.5 inches on June 5 or 6, 2018, whereas

the hail that fell on April 27 or 28, 2020, was reported to only be 1-inch. *Id.* at 334, 338 (Marshall/HAAG Report).

On August 20, 2020, upon the failure of the two appraisers to agree on an umpire, Highway 67 requested the appointment of an umpire from the Honorable Tom Lowe of Tarrant County District Court, 236th Judicial Court, 100 N. Calhoun Street, 5th Floor, Fort Worth Texas 76196. *Id.* at 389-91. Judge Lowe appointed attorney Brent Brown as umpire. *Id.* at 391. On February 25, 2021, Lochridge and Laczynski notified Brown via e-mail that he had been appointed Umpire, that the two appraisers had reached an impasse on the appraisal, and that they wanted to engage his services to bring a resolution to this matter. Pl.'s Summ. J. App., ECF No. 137-2 at 75.

Following the site visit by the appraisers and Umpire Brown, on August 10, 2021, Lochridge e-mailed Umpire Brown that he was revising his earlier position (that the roof did not need to be replaced) to now include replacement of the entire roof at the Arlington Property after confirming that the City would not permit an overlay. *Id.*, ECF No. 137-1 at 166.

Following appraisal, on August 10, 2021, Umpire Brown issued his initial Appraisal Award. Def.'s Summ. J. App., ECF No. 143-1 at 392-394 (Initial Appraisal Award). First, he noted that "both Appraisers agree that the subject roofs . . . each sustained varying levels of hail damage from the hail event occurring on April 27, 2020." *Id.* at 392. He noted that in their initial appraisals, Mr. Laczynski "concluded that full replacement of both roofs was warranted," while Mr.

Lochridge was "of the opinion that while hail damage was present to metal components and some individual roof surfaces at both locations, neither warranted full roof replacement." *Id.* He also noted that after the joint site inspection, both Appraisers submitted amended appraisals and "Mr. Loc[h]ridge, after determining local building requirements as to whether a limited repair approach would be an option on Abram St[.] over the two existing roofs, amended his appraisal to recommend a full replacement of Abram St." *Id.*

Umpire Brown concluded that "a full roof replacement is required at the [Arlington] property" but at the North Richland Hills Property, he saw "no indication of any hail damage to the primary roof membrane." *Id.* at 393.

With respect to the North Richland Hills Property, Umpire Brown adopted Mr. Lochridge's appraisal, and determined the amount of Highway 67's loss to be $63,578.68 on an RCV basis and $44,797 on an ACV basis. *Id.* With respect to the Arlington Property, Mr. Laczynski had appraised the loss at $1,227,536.77 while Mr. Lochridge had appraised the loss at $621,361.82. *Id.* Umpire Brown "adopt[ed] Mr. Laczynski's appraisal, but [] increased the depreciation on that portion of the award by $100,000, to bring the appraisers two very different opinions more toward a middle view." *Id.* Thus, he calculated estimates of the damaged roof for a total RCV of $1,227,536.77 and an ACV of $1,085,731.53. *Id.* The award included costs for a full removal and replacement of the "Modified Bitumin Roof" and "R&R Metal Sections." *Id.*

After receiving the Initial Appraisal Award, Lochridge e-mailed Rico the award and stated, "It appears that I prevailed on one location and did not on the other." Pl.'s Summ. J. App., ECF No. 137-1 at 162. On August 17, 2021, the Initial Appraisal Award was signed by Laczynski, rendering it final. Def.'s Summ. J. App., ECF No. 143-1 at 394.

After receipt of the executed Initial Appraisal Award, Lochridge e-mailed Umpire Brown and stated: "I am in agreement with the Abrams location… ." Pl.'s Summ. J. App., ECF No. 137-1 at 172-74. He further asked for reconsideration of the part of the appraisal award regarding the North Richland Hills Property. Lochridge e-mailed Umpire Brown again that same day, now requesting consideration of the "corrected estimate for 1515 Abram Rd.," adding: "I am not arguing that you should change the scope of work that you have suggested be the award[,] only that the estimate that was presented be corrected for errors." *Id.* at 173. The challenge was to what he perceived to be errors in applying the Xactimate estimating software. *Id.* He further stated: "All other items I have left the same. This does not mean that I agree with any of the remaining line items, only that it is a subjective call to include general items in the estimate and I have presumed you made that decision based on your prior correspondence." *Id.*

On September 10, 2021, Umpire Brown e-mailed both parties' appraisers: "[A]s was requested I have reviewed and considered your additional emails, and now confirm my opinion that no errors were made in the award of August 10, 2021, and that award will therefore stand without modification. I compliment both of

you on your professionalism and the quality of your submissions and your participation in the site inspection of these properties." *Id.* at 177.

Upon receipt of Umpire Brown's September 10, 2021 e-mail, Nationwide's assigned claims adjuster, Rico, e-mailed Lochridge: "Appears the award of 8/10/21 is final and 'binding' Is that correct?" *Id.* at 176. Lochridge replied via e-mail confirming: "Yes, that is correct." *Id.*

On September 15, 2021, Rico, in e-mails with Lochridge, acknowledged that Lochridge had agreed that the Arlington Property required a roof replacement, but stated that, regardless, Nationwide would deny payment for the roof replacement. *Id.* at 179-86.

On September 15, 2021, Umpire Brown and Laczynski signed a Corrected Appraisal Award in which Umpire Brown corrected a transcription error in the original award figure for the ACV of the Arlington Property. *Id.* at 188 (Corrected Appraisal Award), 199-200.

In response to the Corrected Appraisal Award and Highway 67's demand for payment, Nationwide determined that, in light of its initial payment of $39,077.18 on the North Richland Hills Property, nothing further was due. Def.'s Summ. J. App., ECF No. 144 at 1. With respect to the Arlington Property, Nationwide concluded it owed an additional payment of $135,004.0749 (ACV) plus $16,177.65 in prompt penalty interest, for a total of $151,181.72.50. *Id.*

On September 16, 2021, Nationwide's claim stage attorneys sent Highway 67's counsel a letter summarizing Nationwide's decision to issue a payment of

$151,181.72 (ACV), including a deduction for depreciation, based on various line items from the appraisal award which Nationwide contended were covered under the Policy, and a payment for $16,177.65 for "interest owed." *Id.* at 1-5.

### C. **Procedural History**

On February 7, 2022, Highway 67 filed suit in the 298th Judicial District of Dallas County, Texas, asserting claims for breach of contract and subsidiary extracontractual claims premised on Nationwide's failure to pay the full amount of the Corrected Appraisal Award. *See* Pl.'s Orig. Pet., ECF No. 1-1. On April 6, 2022, Nationwide removed this action to this court on the grounds that complete diversity of citizenship exists between the parties and that the amount in controversy exceeds $75,000, exclusive of interest and costs. Notice of Removal, ECF No. 1. In its Second Amended Complaint, filed December 19, 2022, Highway 67 asserted claims for: (1) breach of contract; (2) violations of the TPPCA; (3) bad faith violations in handling the claim under various subsections of § 541 of the Texas Insurance Code; (4) breach of the common law duty of good faith and fair dealing; and (5) violations of the Texas Deceptive Trade Practices Act (DTPA). Sec. Am. Compl. ¶¶ 28-51, ECF No. 18. Highway 67 also sought attorney's fees and expenses under §§ 38.001, 38.002, and 38.003 of the Texas Civil Practice and Remedies Code, and §§ 541.152 and 542.060 of the Texas Insurance Code. *Id.* ¶¶ 33, 52-55.

On March 15, 2024, the Court granted Highway 67's Motion for Leave to File Third Amended Complaint solely to add allegations concerning its anchor tenant's

lease termination on April 13, 2023, as well as consequential damages related to the lease termination. *See* Order, ECF No. 169. On March 25, 2024, Highway 67 filed its Third Amended Complaint, the live pleading, asserting identical claims as its Second Amended Complaint. *See* ECF No. 172.

Nationwide filed its answer to the Third Amended Complaint as well as affirmative defenses on April 8, 2024. Def.'s Orig. Ans. and Defenses to Pl.'s Third. Am. Compl., ECF No. 173. In Affirmative Defense No. 17, Nationwide asserts in pertinent part that

> the umpire's appraisal award is void or without effect. Alternatively, the award should be set aside. The umpire appointment was not made in accordance with the Policy because the appointment was not made by a court "having jurisdiction" as required by the Policy. Jurisdiction consists of both subject matter and personal jurisdiction. Establishing personal jurisdiction over a party requires valid service of process. Plaintiff did not serve process on Defendant as would be required to invoke the state court's jurisdiction. Because Plaintiff failed to properly invoke the state court's jurisdiction by serving Defendant with process in connection with the umpire appointment, Plaintiff failed to comply with the Policy's appraisal clause and the award.

*Id.* ¶ 105.

Highway 67 hired its own expert, Jeff Seaton, who inspected the Arlington Property on February 23, 2023, "to determine the extent of damage cause by hail events that reportedly occurred on April 27, 2020." He determined that "[a]s a result of the April 27, 2020 hailstorm[,] the integrity of the roof membrane has been compromised [and] [t]he findings of the inspection conclude that the TPO membrane needs replacement." App. in Support of Pl.'s Resp. to Def.'s Mot. to Strike, ECF No. 152-1 at 19-24.

The parties have filed renewed cross-motions for summary judgment as to Highway 67's claims for breach of contract and violations of the TPPCA.[4] As with its initial motion, Highway 67 also seeks partial summary judgment as to Nationwide's Affirmative Defense No. 17.[5] Nationwide has, once again, moved for summary judgment on all remaining claims and, alternatively, moves to set aside the appraisal award.

## Legal Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(a)*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a

---

[4] In June 2023, the parties filed motions for summary judgment. On October 10, 2023, Judge Lindsay referred this matter to the undersigned for pretrial management. *See* Order (ECF No. 126). Following a hearing, and in light of the numerous pending discovery disputes, the undersigned issued an Amended Scheduling Order that denied without prejudice to refiling the parties' summary judgment motions and related *Daubert* motions, and set November 17, 2023, as the new dispositive motion deadline. *See* Am. Sch. Order ¶ 5 (ECF No. 134). The parties timely filed their renewed motions.

[5] Highway 67's motion for partial summary judgment as to Nationwide's Affirmative Defense No. 17 appears to relate solely to paragraph 105 of Defendant's Original Answer and Defenses to Plaintiff's Third Amended Complaint (ECF No. 173). The Court will limit its analysis accordingly.

motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not

competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23. "Whe[n], as here, parties have filed cross-motions for summary judgment, each motion must be considered separately because each movant bears the burden of showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Engr's, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004).

## Analysis

As this matter is before the Court pursuant to its diversity jurisdiction under 28 U.S.C. § 1332, the Court applies substantive Texas law, but federal procedural law. *See Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010) (citing

*Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). In addition, the Court notes that, at times, one or both parties have exceeded the page limits set forth in the Local Civil Rules. Any future briefing that exceeds the page limits will not be considered absent a motion for leave of court to exceed these limits.

### A. **Objections to Summary Judgment Evidence**

Each party objects to portions of the other party's summary judgment evidence. *See* ECF No. 156 at 6-13 (HYW 67's objections to Nationwide's evidence supporting Nationwide's response to Highway 67's motion for partial summary judgment); ECF No. 158 (Nationwide's response to Highway 67's objections); ECF No. 149 at 6-10 (Highway 67's objections to evidence supporting Nationwide's motion for summary judgment); ECF No. 159 at 6-7 (Nationwide's objections to evidence support Highway 67's response to its motion for summary judgment). In addition, Nationwide moves to strike or limit the testimony of Jeff Seaton, Highway 67's retained expert.

To promote efficiency, the Court will only take up the objections to evidence on which it relies in making the recommendation on the pending motions for summary judgment. If the Court relies on evidence but does not discuss an objection, it considered both the evidence proffered and objections, and, to the extent the Court regarded portions of the evidence as relevant, admissible, and necessary to the resolution of particular summary judgment issues, overruled those objections. To the extent that the Court did not rely on other evidence about which either party complains, the objections are denied as moot. *Accord Balfour*

*Beatty Rail Inc. v. Kansas City S. Ry. Co.*, 2012 WL 3100833, at \*20 (N.D. Tex. July 31, 2012) (Lindsay, J.).

### 1. Nationwide's Renewed Motion to Strike or Limit Plaintiff's Retained Expert Jeff Seaton (ECF No. 138)

Nationwide has filed a renewed motion to strike or limit Seaton's proposed opinions and testimony. In support, it argues that Seaton's expert report—disclosed on March 20, 2023, along with Highway 67's Amended Initial Disclosures—does not comply "with Federal Rule of Civil Procedure 26(a)(2)'s disclosure requirements or Federal Rule of Evidence 702's admissibility requirements. Seaton's report fails to state the basis and reasons for his opinions or other required information." Def.'s Mot. Strike 1. It also contends that "[l]ater attempts to supplement his expert disclosure and report with this information are untimely, contradict his earlier sworn testimony, and should be struck." *Id.* Further, Nationwide asserts that "Seaton's report also fails to comply with Federal Rule of Evidence 702 and *Daubert* because his opinions are based on an unreliable methodology and will not help the jury understand the evidence or determine a fact in issue." *Id.*

The Court turns first to Nationwide's motion to strike Seaton's causation opinion and testimony based on its contention that his expert report fails to comply with Rule 26(a)(2)(B). Under Rule 26(a)(2)(B), the disclosures of an expert witness who is retained or specially employed to provide expert testimony in the case or

whose duties as the party's employee regularly involve giving expert testimony must be accompanied by a written report containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of compensation to be paid for the study and testimony in the case.

Fed. R. Civ. 26(a)(2)(B). The Advisory Committee's Note to Rule 26 provides that expert witnesses "must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor." Rule 26 advisory committee's note (1993 amendments). "These Notes also explain that the purpose of the reports is to avoid the disclosure of 'sketchy and vague' expert information, as was the practice under the former rule." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996) (citing Rule 26 advisory committee's note (1993 amendments)). "The purpose of a detailed and complete expert report as contemplated by Rule 26(a) … is to prevent an ambush at trial." *In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 2007 WL 5023541, at *1 (S.D. Tex. Feb. 1, 2007) (cleaned up).

Nationwide contends that Seaton's expert report "fails to provide the basis and reasons for his opinions about the alleged damage to the TPO roof membrane and the date it occurred, in violation of Rule 26(a)(2)(B)(i)." Def.'s Br. in Support of Mot. to Strike 12, ECF No. 139. Nationwide asserts that Seaton's expert report

contains scant descriptions of his observations of the property and review of one weather report regarding the April 27, 2020 storm before offering the conclusory statement, without analysis, that "[a]s a result of the April 27, 2020, hailstorm the integrity of the roof membrane has been compromised" and "the TPO membrane needs replacement." *Id.* at 11. Nationwide also argues that Seaton's expert report fails to include other required information, "such as a statement of compensation, the documents and information he reviewed, a list of any previous cases in which he had testified, or a list of any publications authored in the last 10 years (or statement that none exist)". *Id.* at 18.

Seaton's expert report does not comply with Rule 26(a)(2)(B)(ii), (iv), (v), and (vi). His report is sparse and does not provide a basis or reasons for his opinion that "[a]s a result of the April 27, 2020 hailstorm[,] the integrity of the roof membrane has been compromised [and] [t]he findings of the inspection conclude that the TPO membrane needs replacement." *See* App. in Support of Def.'s Mot. to Strike, ECF No. 140 at 32-33 (Seaton's expert report). In addition, his expert report does not contain a statement of compensation, the documents and information he reviewed, a list of any previous cases in which he had testified, or a list of any publications authored in the last 10 years (or statement that none exist). *See id.*

Having concluded that Seaton's expert report does not comply with Rule 26(a)(2)(B), the Court now determines in its discretion whether to quash (i.e., to exclude) Seaton's report and opinions or to impose some lesser sanction. *See, e.g.,* *Kim v. Nationwide Mut. Ins. Co.*, 614 F. Supp. 3d 475, 485 (N.D. Tex. 2022)

(Fitzwater, J.) (citing *Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 505-06 (D. Md. 1997) (surveying cases and concluding that "[t]he net result of the analysis of these cases is that the trial court has enormous discretion in deciding whether a party's violation of the expert report rules is justified or harmless, and the result will be determined by the facts peculiar to each case")). Under the circumstances here— which do not involve willful disobedience of a court order or a complete failure to comply with Rule 26(a)(2)(B)—the Court concludes that it should impose a sanction less drastic than complete exclusion of Seaton's expert testimony. *See Galvez v. KLLM Transp. Servs., LLC*, 575 F.Supp.3d 748, 757-59 (N.D. Tex. 2021) (Fitzwater, J.) (describing court's discretion). That lesser sanction is that Seaton must provide a supplemental report or declaration that fills the gaps in his initial expert report and fully complies with all requirements of Rule 26(a)(2)(B). *See, e.g.*, *Kim*, 614 F. Supp. 3d at 485 (imposing the same requirement).[6]

Here, following Nationwide's initial motion to strike—which the Court denied without prejudice when it amended the Scheduling Order—Highway 67 filed its Second Supplemental Rule 26(a) Initial and Expert Disclosures (ECF No. 115), which included a Declaration from Seaton dated July 6, 2023 (ECF No. 86 at

---

[6] In deciding whether exclusion is appropriate, the Court has considered four factors: "(1) the explanation for the failure to identify the [information]; (2) the importance of the [information]; (3) potential prejudice in allowing the [information]; and (4) the availability of a continuance to cure such prejudice." *Certain Underwriters at Lloyd's, London v. Axon Pressure Prod. Inc.*, 951 F.3d 248, 270 (5th Cir. 2020) (quotation omitted).

7-16), supplementing his expert report, and in which he satisfies the requirements of Rule 26(a)(2)(B).

In the event Nationwide is prejudiced with the service of Plaintiff's Second Supplemental Disclosures dated August 9, 2023 (ECF No. 115), containing Seaton's Declaration dated July 6, 2023 (ECF No. 86 at 7-16), Nationwide may move to re-open discovery to retake the deposition of Seaton.[7] Based on the Court's ruling, it **denies as moot** any further objections based on whether Seaton complied with Rule 26(a)(2)(B), whether his Declaration and attachments thereto should be struck as inconsistent with his prior deposition testimony, and any objections under Federal Rule of Evidence 702, as these objections pertain to Seaton's initial expert report. *See* Def.'s Br. in Support of Mot. to Strike 18-21.

### 2. *Highway 67's Evidentiary Objections*

In support of both its response to Highway 67's motion for partial summary judgment and its own motion for summary judgment, Nationwide tenders the

---

[7] Any argument by Nationwide that it is prejudiced by Seaton's Declaration or service of Plaintiff's Second Supplemental Disclosures is undermined by its representations to the undersigned at an October 2023 pretrial management conference and a hearing on a pending motion to compel. The undersigned specifically asked both sides what fact and expert discovery still needed to be completed since all pretrial deadlines were vacated. Nationwide responded that it did not need any additional discovery other than serving additional document subpoenas. Notably, Nationwide did not ask to take another deposition of Jeff Seaton regarding any matter, issue, or evidence raised in Seaton's Declaration despite taking the position in its previously filed motions to strike briefing (*see* ECF Nos. 45 and 46) that Seaton's Declaration and Highway 67's supplemental expert disclosures were untimely and that it had been prejudiced by its inability to depose Seaton after these additional filings.

June 15, 2023 Declaration of Kenneth Bauer (the "Bauer Declaration"). Def.'s Summ. J. App., ECF No. 143 at 2-6. Bauer is a Commercial Property Technical Director for the Nationwide family of companies, including Depositors, and assisted with the claim at issue in this lawsuit. *Id.* ¶¶ 1, 2. Much of his Declaration pertains to information from the activity log and claims file materials maintained by Nationwide for the claim. *Id.* ¶ 2 and Exhs. B-1 through B-20 thereto.

### a. *Objections to ¶¶ 5, 6, 7, 8, 9, 11, 12, and 15 of Bauer Declaration*

Highway 67 first objects to paragraphs 5, 6, 7, 8, 9, 11, 12, and 15 of the Bauer Declaration on "the grounds that these paragraphs contain inadmissible hearsay and there are no grounds stated indicating any basis for 'personal knowledge' of any of the described events[.]" Highway 67's Obj. 9, ECF No. 156. Highway 67 further objects because "Mr. Bauer has not been qualified or laid the foundation to state what someone else did or why they did it (regarding the multiple references to what other people did and why they acted in any way)." *Id.*

In response, Nationwide argues that Highway 67's objections "fail to specifically identify the evidence objected to" and, in any event, "Bauer's testimony falls under an exception to the hearsay rule because he is competent to serve as a custodian of records and executed a business records affidavit." Def.'s Resp. to Pl.'s Obj. 2, ECF No 158 (citing Fed. R. Evid. 803(6)). The Court agrees.

A hearsay objection must identify the specific statements constituting hearsay. *See* Fed. R. Evid. 103(a)(1); *United States v. Avants*, 367 F.3d 433, 445 (5th Cir. 2004) ("Evidentiary objections must be specific."). "A loosely formulated

and imprecise objection" does not suffice. *United States v. Polasek*, 162 F.3d 878, 883 (5th Cir. 1998) (citation omitted). Here, Highway 67 objects to paragraphs 5, 6, 7, 8, 9, 11, 12, and 15 of the Bauer Declaration on "the grounds that these paragraphs contain inadmissible hearsay," Highway 67's Obj. 9, while failing to identify specific statements to which it objects. Nevertheless, the Court will consider Highway 67's objections.

Federal Rule of Civil Procedure 56(c)(4) states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4). Yet under Federal Rule of Evidence 803(6), evidence that would otherwise be inadmissible as hearsay is admissible under the business records exception if the requirements for admitting the evidence "are shown by the testimony of the custodian or another qualified witness." Fed. R. Evid. 803(6)(D); *see also United States v. Box*, 50 F.3d 345, 356 (5th Cir. 1995) (noting authentication requirement under Rule 803(6)). A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. 602. Personal knowledge can be "demonstrated by showing that the facts stated reasonably fall within the sphere of responsibility of the affiant as a corporate employee." *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005). Personal knowledge may even be "reasonably inferred" from the affiant's position with the company. *Id.*; *see also PNC Bank, Nat'l Ass'n v. Ruiz*, 2023 WL 3340078, at *3 (5th Cir. May 10, 2023) (same).

"There is no requirement that the witness who lays the foundation be the author of the record or be able to personally attest to its accuracy. A qualified witness is one who can explain the record keeping system of the organization and vouch that the requirements of Rule 803(6) are met." *United States v. Brown*, 553 F.3d 768, 792 (5th Cir. 2008) (cleaned up). Business records produced by another entity, but subsequently integrated into the records of the party offering them, are admissible. *United States v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990).

The Court finds that Bauer is qualified to lay the foundation for the business records affidavit as he can explain Nationwide's record keeping system and assure that the requirements of Rule 803(6) are met. Bauer is a technical director with Nationwide, has worked for Nationwide since the early 2000s in various capacities, assists adjusters throughout the country with claims handling, and regularly serves as a Rule 30(b)(6) witness. Bauer Decl. ¶ 1; *see also* App. in Support of Pl.'s Resp. in Opp'n to Def.'s Summ. J. Mot. (Pl.'s Summ. J. Resp. App.), ECF No. 150-2 at 71-72 (Bauer Deposition Tr. 7:24-8:6, 10:11-11:7). In addition, the Bauer declaration explains that the records were made at or near the time by someone with knowledge, kept in the course of a regularly conducted activity of Nationwide, and that making the records was a regular practice. Bauer Decl. ¶ 2.

Further, the Court finds that Bauer's review of Nationwide's claims records and declaration that they were kept in the course of its regularly conducted activities and made by persons with personal knowledge or from information transmitted by persons with knowledge suffices to meet the personal-knowledge

requirement. *See DIRECTV*, 420 F.3d at 530; *PNC Bank*, 2023 WL 3340078, at *3.

For these reasons, the Court **overrules** Highway 67's hearsay and personal-knowledge objections to paragraphs 5, 6, 7, 8, 9, 11, 12, and 15 of the Bauer Declaration and **denies** its motion to strike this evidence.

### b. Objections to Exhibits to Bauer Declaration

Highway 67 objects to the following exhibits attached to the Bauer Declaration as inadmissible hearsay, unauthenticated and/or irrelevant: the CoreLogic Report (Exh. B-5); the Ladder Now Report (Exh. B-6); the HVACi Report (Exh. B-9); and the Tim Marshall/HAAG Report (Exh. B-15). Highway 67's Obj. 10-11.

First, the Court overrules Highway 67's argument that these reports are inadmissible hearsay. Each report is part of Nationwide's claims materials and thus integrated into its business records as part of the ordinary course of investigating claims and authenticated by the Bauer declaration as a business records affidavit. As recognized by the Fifth Circuit, "[t]here is no requirement that the records be created by the business having custody over them." *Duncan*, 919 F.2d at 987; *see also Chillmark Fin. Co. v. Spinks Joint Venture*, 87 F.3d 1312, 1312 (5th Cir. 1996) (per curiam) ("[B]usiness records produced by another but integrated into the records of the party offering them are admissible.") (citation omitted).

As to the CoreLogic Report, the Court also finds that it does not meet the definition of hearsay because it is not a statement under Fed. R. Evid. 801(a), but rather a machine output using "radar-derived estimates of hail size." *See United States v. Hill*, 63 F.4th 335, 358-59 (5th Cir. 2023) (noting that it has found "no error in district court's admitting reports containing raw machine-produced data" that are "non-testimonial") (cleaned up) (collecting cases). The Court also overrules Highway 67's authentication and relevance objections to the CoreLogic Report as the Bauer declaration authenticates it, and the report is relevant because it shows hailfall in 2018, which relates to whether the roof at the Arlington Property was damaged on the asserted date of loss or before the inception of the Policy.

With respect to the Ladder Now Report, the Court overrules Highway 67's authentication and relevance objections as the Bauer declaration authenticates it. Also, the Ladder Now Report is relevant because it pertains to the earliest inspection of the Arlington Property, with the inspector finding no evidence of hail damage to the TPO membrane. Whether and when hail damaged the TPO membrane will be an issue for the jury.

Similarly, with respect to the HVACi Report, the Court overrules Highway 67's authentication and relevance objections as the Bauer declaration authenticates the report and it is relevant because it addresses whether hail damaged the HVAC units, and Nationwide relied on the report in making its claims decision.

As to the Marshall/HAAG Report, the Bauer declaration authenticates the report. Additionally, a party may support or dispute summary judgment using unsworn expert reports, provided their contents can be presented in admissible form at trial. *Patel v. Tex. Tech. Univ.*, 941 F.3d 743, 746-47 (5th Cir. 2019). Nationwide has disclosed Marshall as an expert in this case and he can testify to his report at trial. In addition, the Court finds the report is relevant to matters that will be before the jury, including whether and when the Arlington Property was damaged by hail and, if so, whether the investigation was reasonable.

Highway 67 also objects to the Expert Report of David Teasdale (Exh. C) as hearsay and unauthenticated. Highway 67's Obj. 12. The Court overrules these objections. Under Rule 56, opinions in an unsworn expert report need not be reduced to affidavit form to be competent summary judgment evidence if the expert is expected to testify at trial. *Lee v. Offshore Logistical and Transport, L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017). As with Marshall, Nationwide designated David Teasdale as an expert, and he can testify to the contents of his report at trial. Teasdale's report is thus admissible summary judgment evidence.

For these reasons, the Court **overrules** Highway 67's objections to the CoreLogic Report; the Ladder Now Report; the HVACi Report; the Tim Marshall/HAAG Report; and the Expert Report of David Teasdale. The Court **denies** Highway 67's motion to strike this evidence.

### 3. *Nationwide's Evidentiary Objections*

#### a. *Objection to Exhs. 2 and 3 of Exh. DD*

Nationwide objects to Exhibits 2 and 3 of Exhibit DD to Highway 67's appendix in support of its response to Nationwide's summary judgment motion. Def.'s Obj. 6, ECF No. 159.[8] These are photographs of the interior of the Arlington Property dated June 17, 2018, pre-dating the April 27, 2020 hailstorm but following the June 5, 2018 hailstorm to which Nationwide points as the cause of roof damage. *See* App. in Support of Pl.'s Resp. to Def.'s Mot. to Strike, ECF No. 150-2 at 56-57. Nationwide objects that the photographs were produced after the June 3, 2023 discovery deadline. Def.'s Obj. 6.

It is undisputed that these photographs were produced after June 3, 2023. Nevertheless, the record shows ongoing discovery between the parties after the discovery deadline. *See* App. in Support of Pl.'s Resp. to Def.'s Mot. to Strike, ECF No. 152-1 at 316-23. In addition, the record contains the Declaration of Bart Higgins, counsel for Highway 67, who states that:

> As a result of Nationwide's request and the Court's Order, Plaintiff's owner, Jake Jordan, performed an additional and thorough search for documents and found [the photographs] which are photos of the interior of the building pre-dating the April 27, 2020 hailstorm at issue. Plaintiff immediately produced the additional photos and other documents found compliant with Nationwide's request to conduct another search of Jake Jordan's cell phone and certified to the Court on September 20, 2023, that all responsive documents in Plaintiff's possession had been produced. Nationwide should not complain

---

[8] These photographs are also attached to Seaton's Declaration. *See* App. in Support of Pl.'s Resp. to Def.'s Mot. to Strike, ECF No. 150-2 at 253-56.

about documents produced in compliance with its request and the
Court order.

*Id.*, ECF No. 152-1 at 344. Higgins also states that while the photographs were
produced after the discovery deadline, "there is absolutely no prejudice to
Defendant." *Id.*

Based on this record, the Court **overrules** Nationwide's objection, as it is
evident that the parties continued to engage in discovery after June 3, 2023, and
in September 2023, the Court specifically ordered Highway 67 to certify that it had
produced all responsive documents. Ongoing and unresolved discovery disputes
were the primary reason the undersigned vacated all pretrial deadlines and denied
without prejudice the earlier motions. *See supra* note 4. Further, the evidence is
important, as it relates to the condition of the roof before the April 27, 2020
hailstorm and, as Higgins states, Nationwide has failed to show any prejudice from
the delay in production of the photographs.

### b. Objection to Exh. NN

Nationwide objects to Exhibit NN to Highway's 67's appendix in support of
its response to Nationwide's summary judgment motion. Def.'s Obj. 7. Exhibit NN
is an e-mail from Mike Frasinetti (on behalf of Highway 67's anchor tenant) to Jake
Jordan (co-owner of the Arlington Property), dated April 13, 2023, attaching a
copy of a lease termination agreement by Highway 67's anchor tenant. In the e-
mail, Mr. Frasinetti states that "[t]he ongoing problems we've been having with the
roofing and the HVAC is a factor in our decision" to terminate the lease. Pl.'s

Summ. J. Resp. App., ECF No. 150-2 at 253-56. Nationwide objects that this e-mail regarding the anchor tenant's lease termination is "inadmissible hearsay and not subject to an exception." Def.'s Obj., ECF No. 159 at 7. Nationwide also objects "to the speculative nature of the email, which Plaintiff purports indicates a lease termination in April 2023 due to an April 2020 hail event." *Id.*

The Court notes that Nationwide itself cited to this very e-mail in support of its motion for summary judgment and it is included in Nationwide's appendix. *See* Def.'s Summ. J. App., ECF No. 144 at 48. Given these inconsistencies, and because the Court finds that the e-mail is not speculative, the Court **overrules** Nationwide's objection to Exhibit NN.

### c. *Objection to Exh. FF*

Nationwide also objects to Exhibit FF (Seaton's Declaration) to Highway's 67's appendix in support of its response to Nationwide's summary judgment motions. Def.'s Obj. 7. Because Nationwide makes the same arguments the Court already rejected in denying Nationwide's motion to strike, *see supra* Sec. A.1, the Court **overrules** Nationwide's objection to Exhibit FF.

## B. Cross-Motions for Summary Judgment on Highway 67's Breach of Contract Claim

The parties have filed cross-motions for summary judgment on Highway 67's breach of contract claim. Highway 67 seeks entry of summary judgment in its favor that: (i) the Corrected Appraisal Award is "binding and enforceable"; and (ii) "Nationwide is in breach of contract for not paying the [Corrected] Appraisal

Award [in full]." Pl.'s Summ. J. Br. 7, ECF No. 136. Relatedly, Highway 67 seeks summary judgment on Nationwide's Affirmative Defense No. 17, arguing that "[n]either the appraisal clause of [the] Policy or Texas law required Highway 67 to provide prior notice and/or service of process on Nationwide before the appointment of Umpire Brown[.]" *Id.*

In response, Nationwide contends that it "has offered evidence of specific genuine fact issues as to the enforceability of the award and whether there is coverage under the Policy such that Plaintiff's Partial MSJ fails as a matter of law." Def.'s Summ. J. Resp. Br. 31, ECF No. 146.

In its cross-motion for summary judgment on the breach of contract claim, Nationwide contends it is entitled to summary judgment under the concurrent causation doctrine, because Highway 67 has failed to "segregate damages that occurred during the policy period from those outside the policy period." Def.'s Summ. J. Br. 12, ECF No. 142. In the alternative, Nationwide moves the Court to set aside the appraisal award because "[t]he court that appointed the appraisal umpire did not have jurisdiction over [Nationwide], which violated the policy's terms such that the umpire's actions are void and without effect"; and "[t]he appraisal award is the result of fraud, accident, or mistake." *Id.* at 13-14.

The Court first addresses the competing arguments regarding the validity and enforceability of the Corrected Appraisal Award.

### 1. The Corrected Appraisal Award is valid and enforceable and Highway 67's motion for summary judgment on this point should be granted.

Highway 67 moves for partial summary judgment on the validity and binding nature of the Corrected Appraisal Award. Pl.'s Mot. Partial Summ. J. 2-3. Relatedly, Highway 67 moves for partial summary judgment dismissing Nationwide's Affirmative Defense No. 17, *supra*, in which Nationwide asserts that the Corrected Appraisal Award should be set aside as the umpire's appointment was not made in accordance with the policy. *See* Def.'s Orig. Ans. and Defenses to Pl.'s Third Am. Compl. ¶ 105.

In response, Nationwide contends that fact questions remain as to whether the appraisal award was "issued as a result of fraud, accident, or mistake" or "was an honest assessment of necessary repairs." Def.'s Summ. J. Resp. Br. 15. It further contends that, "[t]o the extent it is not dispositive as a matter of law, a fact question remains as to whether the appraisal award was not made in compliance with the requirements of the policy as the policy requires that a court having jurisdiction appoint the umpire." *Id.* at 15-16. Further, to the extent the Court declines to grant summary judgment in its favor on Highway 67's breach of contract claim, Nationwide moves the Court to set aside the appraisal award because "[t]he court that appointed the appraisal umpire did not have jurisdiction over [Nationwide], which violated the policy's terms such that the umpire's actions are void and without effect"; and "[t]he appraisal award is the result of fraud, accident, or mistake." Def.'s Summ. J. Br.13-14.

32

An appraisal award is binding and enforceable and may not be set aside by the court unless the contesting party shows the award was (1) made without authority; (2) the result of fraud, accident, or mistake; or (3) not in substantial compliance with the insurance policy. *TMM Investments, Ltd. v. Ohio Casualty Ins. Co.*, 730 F.3d 466, 472 (5th Cir. 2013) (citing Texas law); *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 344 (Tex. App.—Corpus Christi 2004, pet. denied). Every reasonable presumption will be indulged to sustain the award. *TMM Investments*, 730 F.3d at 472.

As the contesting party, Nationwide has the burden to prove at least one of the exceptions to enforceability, otherwise it is estopped from contesting the issue of damages. *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *TMM Investments*, 730 F.3d at 472. Nevertheless, the Court must resolve all doubts in Nationwide's favor and view the evidence in the light most favorable to it, as it is the party opposing summary judgment. *Dhaliwal v. Meridian Sec. Ins. Co.*, 2022 WL 16836609, at *3 (E.D. Tex. Nov. 9, 2022) (citation omitted).

### a. Fraud, Accident, or Mistake

Although Nationwide originally asserted that the Corrected Appraisal Award was a result of fraud, Kenneth Bauer, Nationwide's national claim organization's technical director, conceded at his deposition that Nationwide had no evidence of fraud and was no longer arguing that the award was the result of fraud. *See* Pl.'s Summ. J. App., ECF No. 137-2 at 30 (Depo. Tr. 151:4-151:7).

Nationwide first contends the award was the result of a mistake or accident because the "record contains evidence that the umpire, Brent Brown, issued his award relying on an incorrect assumption that the appraisers' positions presented damage only occurring on the Date of Loss, without himself ever verifying the date of the alleged damage." Def.'s Summ. J. Resp. Br. 15-16. In support, Nationwide points to a March 8, 2021 e-mail from Lochridge to Umpire Brown, in which Lochridge made the following general disclaimer: "Also, please be aware that in accordance with the recent *Tippett v. Safeco* case, I valued all damage regardless of causation or coverage including when that damage may have occurred." *Id.* at 16 (citing March 8, 2021 E-mail from Lochridge, Def.'s Summ. J. App., [ECF No. 144 at 216](#)). In addition, Nationwide asserts that "[t]he record contains no evidence that Plaintiff's appraiser limited the scope of his submission to only damage occurring during the policy period. Yet Brown mistakenly believed the positions submitted by the appraisers reflected damage only from the one specific event." *Id.* Nationwide concludes that "[b]ecause Brown issued an award he believed was limited to damage occurring during the policy period when the record makes clear it was not, [it] has presented evidence that the award was the result of fraud, accident, or mistake." *Id.*

"A court may set aside an award on the ground of mistake . . . only upon a showing that the award does not speak the intention of the appraisers." *MLCSV10 v. Stateside Enters., Inc.*, 866 F. Supp. 2d 691, 702 (S.D. Tex. 2012) (Rosenthal, J.) (quoting *Providence Wash. Ins. Co. v. Farmers Elevator Co.*, 141 S.W.2d 1024,

1026 (Tex. Civ. App.—Amarillo 1940, no writ)). "'Mistake' in this context has a narrowly defined meaning: an actionable 'mistake' is one that caused an award to operate in a way the appraisers did not intend." *Garcia v. Lloyds*, 514 S.W.3d 257, 269 (Tex. App.—San Antonio 2016, pet. denied). Mistake "applies when the complainant establishes that the appraisers were operating under a mistake of fact which resulted in an unintended award." *Abdalla v. Farmers Ins. Exch.*, 2018 WL 2220269, at *1 (Tex. App.—Amarillo May 14, 2018, no pet.).

Here, Nationwide has failed to provide evidence sufficient to raise a genuine dispute of material fact that the Corrected Appraisal Award did not speak to Umpire Brown's or the appraisers' intent. An umpire often must choose between two competing values, and Umpire Brown's decision to agree with the appraisal estimate of Highway 67's appraiser rather than Nationwide's does not mean his award was premised on a mistake. *See MLCSV10*, 866 F. Supp. 2d at 702.

Further, Lochridge's March 8, 2021 e-mail was written before he revised his estimate and opinion on July 14, 2021, now opining that a full roof replacement was required at the Arlington Property to comply with code requirements and providing Brown with new numbers for estimated damages. *See* Pl.'s Summ. J. App., ECF No. 137-1 at 166 (E-mail from Lochridge to Brown dated August 10, 2021) ("As we discussed on site, I revised my position to include full replacement of [Arlington Property] roof…"); *id.* at 182 (E-mail from Rico to Lochridge dated September 15, 2021) ("Your scope and evaluation on [the Arlington Property] indicates that you agreed to replace the main roof. Could you please let us know

what you saw on the main roof that caused you to agree that there was hail damage to the roofing membrane."); *id.*, ECF No. 137-2 at 238, 245-48 (Lochridge's Revised Estimate dated July 14, 2021). Thus, Umpire Brown had before him Lochridge's revised estimate (not his original estimate in his March 8th e-mail) when he issued the Corrected Appraisal Award. Umpire Brown testified at his deposition that he based his award of the "new numbers" submitted by Lochridge after he changed his opinion and concluded that the roof had to be completely replaced. Pl.'s Summ. J. Resp. Br., ECF No. 150-1 at 251 (Depo. Tr. 142:17-142:25, 143:11-143:25). In light of Lochridge's revised estimate and Umpire Brown's deposition testimony, Nationwide's arguments premised on a pro forma disclaimer in Lochridge's March 8, 2021 e-mail fail to raise a material fact issue.

Further, while Nationwide argues that Umpire Brown "did not verify that the appraisal award only contained damages that occurred in the policy period," it does not offer what damages occurring outside the policy period were included in the Corrected Appraisal Award. Without that evidence, Nationwide relies on speculation, which is not sufficient to raise a genuine dispute of material fact. *See Clayton v. U.S. Xpress, Inc.*, 538 F. Supp. 3d 707, 711 (N.D. Tex. 2021) (Lindsay, J.) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.") (citation omitted).

Nationwide next contends that the award should be set aside because Umpire Brown did not follow Xactimate pricing and items used by Lochridge, and, therefore, the award was not an "honest assessment of damages." Def.'s Summ. J.

Resp. Br. 15. As previously stated, however, Bauer made clear at his deposition that Nationwide had no evidence that the award should be set aside because of fraud, *see* Pl.'s Summ. J. App., ECF No. 137-2 at 30, which encompasses its contention that the award was a dishonest assessment of damages.

Even assuming Nationwide had not abandoned arguments premised on fraud, Lochridge acknowledged in his revised estimate that "[u]ltimately, the prices used within estimates and the items included are completely up to the estimator. As stated above, the size and complexity of jobs can have a significant impact on the amount of labor required to complete them. Estimators must use their skill and knowledge of each loss to determine the appropriate items and pricing." *See* Lochridge's Revised Estimate, Pl.'s Summ. J. App., ECF No. 137-2 at 245. In addition, Nationwide presented the same arithmetic and pricing arguments to Umpire Brown before he issued the Corrected Appraisal Award. *Id.*, ECF No. 137-1 at 172-74. Umpire Brown found no error and rejected these arguments. *Id.* at 177. An umpire's decision to use certain pricing, labor, and items in an award does not constitute evidence to vacate an appraisal award on the grounds of a mistake. "An umpire often must choose between two competing values," and the decision to choose one value over another does not mean the award was premised on a mistake. *MLCSV10*, 866 F. Supp. 2d at 702.

For these reasons, the Court determines that, even viewing all evidence in the light most favorable to Nationwide as the non-moving party, Nationwide has failed to raise a genuine dispute of material fact that the Corrected Appraisal Award

should be set aside based on accident or mistake or because it was not an honest assessment of damages.

### b. Compliance with the Policy

Nationwide also contends that "a fact question remains as to whether the appraisal award was not made in compliance with the requirements of the policy as the policy requires that a court having jurisdiction appoint the umpire." Def.'s Summ. J. Resp. Br. 18. Nationwide posits that jurisdiction, as used in the appraisal provision, consists of both subject matter and personal jurisdiction, and that "[p]ersonal jurisdiction is composed of two elements: (1) the defendant must be amenable to the jurisdiction of the court, and (2) the plaintiff must validly invoke that jurisdiction by valid service of process on the defendant." *Id.* (citations omitted). Nationwide argues that "[i]t is undisputed that Plaintiff did not obtain valid service of process [over it] prior to requesting the umpire appointment. To the extent this failure is not dispositive of whether the award is enforceable as a matter of law, a fact issue remains as to whether the resulting award was issued in compliance with the requirements of the policy." *Id.* at 19 (citation omitted).

In reply, Highway 67 asserts that Nationwide's argument "upends appraisal law." Pl.'s Reply 24, ECF No. 156. Highway 67 further points out that the "Policy drafted by Nationwide does not require service of citation of a request for the appointment of an umpire and no court has ever held that citation is a jurisdictional prerequisite to the appointment of an umpire by a court." *Id.* According to Highway 67, Umpire Brown's appointment satisfied the Policy and

Nationwide never contested jurisdiction or challenged the appraisal award as to the North Richland Hills Property. *Id.* at 24-25. The Court agrees and, for the reasons that follow, determines that Nationwide's argument is without legal merit and inconsistent with its conduct during and after the appraisal process.

The relevant portion of the Policy's appraisal provision provides:

> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and will notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, *either may request that selection be made by a judge of a court having jurisdiction.*

Pl.'s Summ. J. App. 65 (emphasis added).

Neither party has provided the Court with case law that is on point. The Court's research reveals that two federal district court judges in Texas have opined on this exact issue under nearly identical appraisal provisions, and both have rejected the argument currently espoused by Nationwide, i.e., that service of process is required under these circumstances. *See Charter Oak Fire Ins. Co. v. Shamrock Steel Sales, Inc.,* 2019 WL 10351608, at *4 (W.D. Tex. Jan. 3, 2019); *Janice B. Schwartz, et al. v. Century Surety Co.,* Civil Action No. 1:11-CV-217-C, United States District Court for the Northern District of Texas, Abilene Division, Order, ECF No. 8 at 3.

In *Charter Oak Fire*, the insurance company sought to set aside an appraisal or remove the umpire after the insured invoked appraisal under a nearly identical

39

appraisal provision without providing additional notice or conference with the insurer. The district judge denied the motion stating:

> After a written demand is made, the appraisal clause provides that each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of the demand. The two appraisers will select an umpire but, if they cannot agree within 15 days, "either may request that selection be made by a judge of a court having jurisdiction." Again, Defendant made its appraisal demand on March 26, 2018. Therefore, on May 11, 2018—after more than the contractually-outlined 35 days passed without Plaintiff appointing an appraiser or the parties' appraisers reaching an agreement—the appraisal clause authorized Defendant to file its Application requesting that the judge select an umpire to serve in this matter. To find otherwise would render the time specifications in the Policy meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) ("[C]ourts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.").
>
> The operative question, then, is whether either the Policy or Due Process demand more notice be given to Plaintiff with regard to the Application process. The Policy provides that *either* may request that a judge select an umpire. Applying the presumption of consistent usage, "*either*" should be given the same meaning throughout the appraisal clause. *Horseshoe Bay Resort, Ltd. v. CRVI CDP Portfolio, LLC*, 415 S.W.3d 370, 384 n.7 (Tex. App. 2013) (noting that a word or phrase is presumed to bear the same meaning throughout a text). Plaintiff does not contest that Defendant properly invoked the appraisal process—without first notifying Plaintiff—in fulfillment of the provision that "either may make a written demand." In accordance with that usage, <u>the Policy authorized Defendant to request that a judge select the umpire in this matter without necessitating additional notice or conference with Plaintiff.</u> The Court finds that the Policy is unambiguous, and Defendant's actions comported with the demand process outlined in its appraisal clause.

*Id.* at *4 (italicization in original) (underline added) (internal citations omitted).

The court also found that "the steps outlined by the appraisal clause and taken by the [insured] satisfy the requirements of due process." *Id.* (citations omitted).

In the *Schwartz* case, *supra*, Judge Sam Cummings reached the same conclusion, denying an insurer's Motion for Emergency Relief to Vacate Order Appointing Umpire and Stay Appraisal Process, predicated on the same argument as that made by Nationwide. *See Schwartz,* Civil Action No. 1:11-CV-217-C, Order, ECF No. 8 at 3. In *Schwartz*, the insurer argued that the process was not fair because the insured sought the appointment of the umpire without notice to the insurer; however, the Judge Cummings agreed with the insured and found that "the insurance contract, presumably drafted by the insurer, does not require that notice be given to the other party before seeking appointment of an umpire by a court with jurisdiction. As such, any ambiguity as to whether notice is first required before seeking judicial intervention is interpreted against the drafter." *Id.* (citing *Assicurazioni Generali, S.p.A. v. Ranger Ins. Co.,* 64 F.3d 979, 983 (5th Cir. 1995)).

The undersigned agrees with the reasoning in these two decisions and determines that the appraisal provision in the Policy, nearly identical to that in *Charter Oak Fire* and *Schwartz*, *supra*, authorized Highway 67 to request that a judge in Tarrant County (where both properties are located) select the umpire in this matter without necessitating additional notice or conference with Nationwide. The Court finds that the Policy is unambiguous, and Highway 67's actions

comported with the demand process outlined in its appraisal clause and with due process concerns.[9]

Further, Nationwide's conduct during and after appraisal undermines its argument. Nationwide's September 16, 2021 letter from its claim stage attorneys did not challenge the appointment of Umpire Brown or the appraisal process and accepted the appraisal award for the North Richland Hills Property, which was favorable to it. *See* Def.'s Summ. J. App., ECF No. 144 at 2-5. Neither Nationwide nor its lawyers claimed that the appraisal for either property was defective or improper or in any way void or unenforceable until Highway 67 filed this lawsuit. *Id.* Also, Nationwide paid 50% of the umpire's professional fees before the appraisal awards were issued. Pl.'s Summ. J. Resp. App., ECF No. 150-1 at 249. On this record, the legitimacy of Nationwide's argument is undermined by its inconsistent actions.

The Court also agrees with Highway 67 that, in addition to lacking any legal support, Nationwide's argument "upends appraisal law." Pl.'s Reply 24 (cleaned up). The purpose of appraisal is "to resolve the parties' dispute over the amount of loss for a covered claim without incurring the time and expense of litigation."

---

[9] The Court also notes that, given an opportunity to interpret a nearly identical appraisal provision in the manner argued by Nationwide, the Texas Supreme Court instead denied a petition for mandamus filed by an insurance company. *See In re Amerisure Ins. Co.*, No. 13-0723, 2014 Tex. LEXIS 1249, at 1 (Tex. Mar. 21, 2014) (orig. proceeding) (denying mandamus relief to an insurance company complaining that an appointment of an umpire should be set aside because a judge signed the appointment before the insurance company was even notified that the application was filed).

*Scalise v. Allstate Texas Lloyds*, 2013 WL 6835248, at *3 (S.D. Tex. Dec. 20, 2013). As stated by the Texas Supreme Court, "Appraisals require no attorneys, no lawsuits, no pleadings, no subpoenas, and no hearings. It would be a rare case in which appraisal could not be completed with less time and expense than it would take to file motions contesting it." *State Farm Lloyds v. Johnson*, 290 S.W. 3d 886, 894 (Tex. 2009).

In short, the Policy detailed the specific process to resolve any disagreement between the parties regarding the amount of loss. Each party chose its appraiser and, after the appraisers reached an impasse as to the amount of loss and could not agree on an umpire, within the time frame specified in the Policy, Highway 67 sought the appointment of an umpire from a judge in Tarrant County, where the two properties are located. The award was entered following the appraisal process outlined by the Policy. Brown resolved any disagreements between the parties as to the amount of loss when he entered the Corrected Appraisal Award, and two of the three signed on to the award. Thus, the appraisal process was consistent with the requirements of the Policy.

Accordingly, Nationwide has failed to raise a genuine dispute of material fact sufficient to defeat Highway 67's motion for summary judgment as to the validity and enforceability of the Corrected Appraisal Award. There are no grounds, legal or factual, to set aside the Corrected Appraisal Award and the District Judge should grant Highway 67's motion for summary judgment as to the validity and enforceability of the Corrected Appraisal Award and dismiss Nationwide's

Affirmative Defense No. 17 (in which Nationwide asserts that the Corrected Appraisal Award is void and without effect or, alternatively, it should be set aside as the umpire's appointment was not made in accordance with the Policy)[10]; deny Nationwide's motion for summary judgment insofar as it challenges the validity of the Corrected Appraisal Award; and deny Nationwide's alternative motion to set aside the Corrected Appraisal Award, as it is premised on the same arguments the Court has already rejected.

### 2. Because both parties have raised genuine disputes of material fact as to Nationwide's liability under the Policy for failing to pay the full amount of the Corrected Appraisal Award, the cross-motions for summary judgment on Highway 67's breach of contract claim should be denied.

A "breach of contract" occurs when a party fails to perform an act it has promised to perform. *Gaspar v. Lawnpro, Inc.*, 372 S.W.3d 754, 757 (Tex. App.— Dallas 2012, no pet.). "In Texas, '[t]he essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4)

---

[10] When, as here, the summary judgment movant will not have the burden of proof on a defense at trial, it can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's affirmative defense. *See Celotex*, 477 U.S. at 325. As detailed above, Highway 67 has met this burden and has shown that Affirmative Defense No. 17 lacks legal merit. The burden has therefore shifted to Nationwide to present evidence that creates a genuine dispute of material fact. As discussed above, Nationwide has failed to do so, and the Court has determined that its legal arguments seeking to set aside the Corrected Appraisal Award lack merit. Therefore, the District Judge should also grant Highway 67's motion for partial summary judgment and dismiss that portion of Nationwide's Affirmative Defense No. 17 seeking to set aside the Corrected Appraisal Award and hold that it has no merit.

damages sustained by the plaintiff as a result of the breach.'" *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).

Courts must construe insurance policies "using ordinary rules of contract interpretation." *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). Thus, an insurance policy is "interpreted as a whole in accordance with the plain meaning of its terms." *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 892 (Tex. 2017). When policy language is "clear and definite," the policy "is not ambiguous and will be construed as a matter of law." *Id.* at 893.

"Initially, the insured has the burden of establishing coverage under the terms of the policy." *JAW The Pointe, L.L.C. v. Lexington Co.*, 460 S.W.3d 597, 603 (Tex. 2015) (citation omitted).

> ### a. The Court should deny Highway 67's motion for summary judgment as to Nationwide's liability for breach of contract.

Highway 67 seeks summary judgment on its breach of contract claim, arguing that "Nationwide is in breach of contract for not paying the [Corrected] Appraisal Award [in full]." Pl.'s Summ. J. Br. 7. In addition, Highway 67 argues that it is entitled to summary judgment on its breach of contract claim because liability has already been established. *See* Pl.'s Reply 14, ECF No. 156.

In response, Nationwide argues that Highway 67 conflates damages and liability, and that it has raised a genuine dispute of material fact that the TPO membrane of the roof at the Arlington Property was not damaged by hail and,

therefore, not covered under the Policy. Def.'s Summ. J. Resp. Br. 23. Alternatively, Nationwide contends that even if there is hail damage to the roof, it has raised a genuine dispute of material fact as to whether hail damage existed at the property prior to the Policy period. *Id.* at 28.

Highway 67 is moving for summary judgment on a claim for which it will have the burden of proof at trial. To establish that it is entitled to summary judgment on this claim, it must establish "beyond peradventure all of the essential elements of the claim[.]" *Fontenot*, 780 F.2d at 1194. This means that it must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is heavy." *Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (cleaned up).  For the reasons that follow, Highway 67 has not met this burden, and thus the Court should deny Highway 67's motion for partial summary judgment on its breach of contract claim.

First, insofar as Highway 67 seeks to rely on the Corrected Appraisal Award as "proof" of its assertion that Nationwide is liable for breaching the terms of the Policy, such reliance is unfounded. Under Texas precedent, an appraisal award, by itself, does not entitle either the insured or the insurer to judgment in its favor as to the insured's claim against the insurer for breach of contract. *See Sec. Nat. Ins. Co. v. Waloon Inv., Inc.*, 384 S.W.3d 901, 905 (Tex. App.—Houston [14th Dist.]

46

2012, no pet.) (appraisal award, standing alone, does not determine the merits of a breach of contract claim; appraisal is limited to determining amount of loss, not whether an insurer should pay); *see also Hall v. Germania Farm Mut. Ins. Ass'n*, 2017 WL 4630028 (Tex. App.—Amarillo Oct. 13, 2017, no pet.) (noting that the effect of an appraisal award estops one party from contesting the issue of damages while leaving open the question of liability); *Amtrust Ins. Co. of Kan., Inc. v. Starship League City, L.P.*, 2012 WL 2996489 (E.D. Tex. June 4, 2012) (appraisal process does not replace judicial process; party still has the right to ask a court to interpret its rights and obligations under policy). As the Texas Supreme Court held in *State Farm Lloyds v. Johnson*, "the scope of appraisal is damages, not liability." *Johnson*, 290 S.W. 2d at 890. Notably, however, an "appraisal necessarily includes some causation element, because setting the 'amount of loss' requires appraisers to decide between damages for which coverage is claimed from damages caused by everything else." *Id.* at 892-93.

With respect to Highway 67's assertion that liability was established *before* the appraisal, this contention is premised on its position that "Nationwide unconditionally accepted the claim" and that no coverage issues existed when appraisal was invoked. *See* Pl.'s Reply 14. Nationwide has provided evidence that, although it did not cite to any exclusions in the policy relating to coverage, its estimates made clear that it only paid for what it determined were covered losses, which did not include the roof itself. Nationwide's revised estimate stated:

47

> [Ladder Now's inspection] *did not reveal any storm related damage to the TPO membrane.* They did find hail damage to the exhaust ventilators, the metal roofing on the right and back elevations, and the HVAC units condenser fins. . . . At this time, I am attaching our Revised Estimate which now includes the covered damages found [at the Property].

Def.'s Summ. J. App., ECF No. 143-1 at 203 (emphasis added).

The revised estimate dated June 25, 2020, added the damage and cost of repair identified by HVACi. *Id.*, ECF No. 143-1 at 315-23. The new estimate totaled $40,516.12 RCV and $39,638.32 ACV. *Id.*, ECF No. 143-1 at 319. Nationwide's payment summary reflects that, after applying the $20,880.00 hail/wind deductible, it issued payment in the amount of $18,758.32 on June 26, 2020. *Id.*, ECF No. 143-1 at 324. On June 26, 2020, Rico noted in the activity log that he e-mailed Movalson a copy of the revised estimate and "[e]xplained estimate and ACV payment of $18,758.32." *Id.*, ECF No. 143-1 at 123.

And, when it accepted Highway 67's invocation of appraisal, Nationwide expressly stated that "coverage issues remain" surrounding the "extent and causation of damage" to the property, that an engineer was being engaged to investigate the extent and causation of additional covered damages, if any, and explicitly reserved its rights under the Policy and applicable law, including its contractual right to deny the claim for lack of coverage even after the appraisal was conducted. *Id.*, ECF No. 143-1 at 329-31.[11]

---

[11] Although HWY 67 contends that the reservation of rights letter was "too little, too late[,]" *see* Pl.'s Reply 14, ECF No. 156, it provides no argument supporting this statement.

48

Moreover, Nationwide has raised a genuine dispute of material fact that the TPO membrane of the roof at the Arlington Property was not damaged by hail, and therefore not covered under the Policy. The Ladder Now Report, prepared following the initial inspection of the property, revealed no wind or hail damage to the property's TPO roofing system. *Id.*, ECF No. 143-1 at 147-49. In addition, HAAG engineer Marshall inspected the property on behalf of Nationwide and issued his report dated August 11, 2020, in which he concluded the TPO roofing system was not damaged or fractured by hail. *Id.*, ECF No. 143-1 at 338. Nationwide also retained Teasdale to reinspect the property after Highway 67 filed suit. Teasdale found no hail damage to the TPO roofing system. *Id.*, ECF No. 143-1 at 11.

Because Nationwide has produced summary judgment evidence that there was no hail damage to the TPO roofing system at the Arlington Property, a genuine dispute of material fact remains concerning whether Nationwide underpaid the claim and is liable under the Policy for additional amounts following the Corrected Appraisal Award. Accordingly, the Court should deny Highway 67's motion for summary judgment on its breach of contract claim.

> b. *The Court should deny Nationwide's motion for summary judgment as to Highway 67's claim that it is liable for breach of contract.*

Nationwide contends that it is "entitled to summary judgment because plaintiff has not segregated damages during the policy period from non-covered damages that fell outside the policy period." Def.'s Summ. J. Br. 20. Nationwide

relies upon the concurrent causation doctrine to form the basis of this argument for summary judgment. *See id.*

> i. Allocation under the Concurrent Cause Doctrine

Under the concurrent causation doctrine, "when covered and non-covered perils combine to create a loss, the insured is entitled to recover that portion of the damage caused solely by the covered peril. The burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof. Failure to segregate covered and noncovered perils is fatal to recovery." *Advanced Indicator and Manufacturing, Inc. v. Acadia Ins. Co.,* 50 F.4th 469, 476-77 (5th Cir. 2022)[12]; *see also Lyons v. Miller Cas. Ins. Co. of Tex.,* 866 S.W.2d 597, 601 (Tex. 1993). Segregation of damages is generally an issue of fact for the jury. An insured may meet its burden of proof by presenting evidence demonstrating the alleged loss came entirely from a covered cause or evidence by which a jury may reasonably segregate covered and non-covered losses. *Advanced Indicator,* 50 F.4th at 476-77; *Travelers Indem. Co. v. McKillip,* 469 S.W.2d 160,

---

[12] The Fifth Circuit has noted that "there are substantial gaps" in the doctrine of concurrent causation and has made multiple attempts to certify questions involving the doctrine to the Supreme Court of Texas. *See Overstreet v. Allstate Vehicle and Prop. Ins. Co.,* 34 F.4th 496, 497 (5th Cir. 2022*), certified question accepted* May 27, 2022, *certified question dismissed* Sept. 16, 2022; *Frymire Home Servs., Inc. v. Ohio Sec. Ins. Co.,* 12 F.4th 467 (5th Cir. 2021), *certified question accepted* Sept. 10, 2021, *certified question dismissed* Dec. 3, 2021; *see also Advanced Indicator & Mfg., Inc. v. Acadia Ins. Co.,* 50 F.4th 469, 476 n.4 (5th Cir. 2022) (noting that *Overstreet* and *Frymire* both settled after certification, so the court's questions regarding when the concurrent doctrine applies and the plaintiff's burden of proof under it remain unanswered).

162 (Tex. 1971). Expert allocation of damages between covered and excluded risks is not necessarily required; "circumstantial evidence can suffice." *Lyons,* 866 S.W.2d at 601 (finding that testimony of insured and her neighbors that there was no preexisting damage to the staircase or brick veneer constituted some evidence of the extent of damage attributable solely to the windstorm rather than to settling foundation, an excluded peril under which insurer denied coverage).

In the context of summary judgment, to satisfy its burden under the concurrent causation doctrine, an insured must present evidence which raises a genuine dispute of material fact whether the alleged loss is a covered loss or present evidence from which a jury may "reasonably segregate covered and non-covered losses." *See Advanced Indicator,* 50 F.4th at 476-77. As in *Advanced Indicator,* the question before this Court is whether Highway 67 presents sufficient summary judgment evidence to create a disputed issue of material fact whether the damage to the Arlington Property was caused solely by the June 27, 2020 hailstorm, which occurred during the subject Policy period, or evidence from which a jury may "reasonably segregate covered and non-covered losses."

To defend against summary judgment on this basis, Highway 67 first presents summary judgment evidence consisting of a declaration from Jake Jordan, one of the owners of the Arlington Property. *See* Pl.'s Summ. J. Resp. App., ECF No. 150-2 at 16-19 (Jordan Decl.).

In his Declaration, Jordan states that "[a]fter purchasing the [Arlington] Property, Highway 67 secured a new anchor tenant, Channel Control Merchants of

Texas, LLC d/b/a Dirt Cheap I, LLC (Dirt Cheap) on or about March 8, 2017." *Id.*
at 16, Jordan Decl. ¶ 3. Attached to Jordan's Declaration is a copy of the lease
agreement between Highway 67 and Dirt Cheap, which states that as a condition
to delivering the property to the new tenant, Highway 67 was required to "ensure
the roof is free of leaks" and put on a new overlay over the roof. *Id.* at 17, Jordan
Decl. ¶ 3 and Exh. 1 (Lease).

Jordan states that prior to the lease commencing, Highway 67 retained DW
Gold Construction Company to complete the roof repairs needed to satisfy the
lease agreement. *Id.* at 17, Jordan Decl. ¶ 4. The roof work, which was completed
in May 2018, included both ensuring that the roof was free of leaks and installation
of the TPO roof overlay before occupancy. *Id.* Highway 67 also retained an HVAC
company to replace the existing HVAC units prior to the commencement of the
work. *Id.* Based on the completion of this work, the lease with the new tenant
commenced on August 8, 2018. *Id.*

Jordan attaches to his Declaration a photograph he took on June 17, 2018,
of the interior of the Arlington Property, "document[ing] that there were no roof
leaks at that property." *Id.* at 17, Jordan Decl. ¶ 5 and Exh. 2. He also states that
"Nationwide could have inspected [the property] before binding insurance
coverage but chose not to." *Id.* at 18, Jordan Decl. ¶ 5.

According to his Declaration, Jordan personally inspected the roof at the
Arlington Property and its HVAC units on a regular basis since Highway 67
purchased the property in 2017. *Id.* at 18, Jordan Decl. ¶ 8. He saw "no damage

during [his] inspections of the [Arlington Property] roof and HVAC units after the June 5, 2018 hailstorm or any other prior hailstorms." *Id.*

Jordan states that as part of a regular maintenance program at the Arlington Property, Highway 67 immediately repaired any water leak and addressed every complaint or incident regarding the roof and/or the HVAC units prior to the April 27, 2020 hailstorm. *Id.* at 19, Jordan Decl. ¶ 10. He states that the June 17, 2018 photograph he took "shows the June 5, 2018 hailstorm did not cause damage to the [Arlington] Property sufficient to cause a water leak through the interior ceiling tiles and there was no need for a full replacement of the roof and indicates that no repairs were needed of any kind to the roof." *Id.* at 18, Jordan Decl. ¶ 9. He states that "the photograph also demonstrates the roof remained watertight after the June 5, 2018 hailstorm." *Id.*

Further, Jordan asserts that "[p]rior to the April 27, 2020 hailstorm, the roof . . . and HVAC units were fully operational and in good condition. After the April 27, 2020 hailstorm, the roof leaked and the HVAC stopped functioning properly." *Id.* at 19, Jordan Decl. ¶ 11. Finally, Jordan attaches copies of photographs of the interior of the Arlington Property taken after the April 27, 2020 hailstorm "showing the water leakage through the interior ceiling tiles following the April 27, 2020 hailstorm." *Id.* at 19, Jordan Decl. ¶ 12 and Exh. 3.

The Court finds that Jordan's Declaration, alone, presents evidence from which a reasonable jury could conclude the April 27, 2020 hailstorm caused significant damage that required property repair and/or replacement of the roof

irrespective of any damage caused by a previous storm outside the Policy period. *See, e.g., B&L Env't v. Travelers Lloyds Ins. Co.,* 2023 WL 4707995, at *4 (E.D. Tex. July 24, 2023) (denying insurer's summary judgment motion based on concurrent cause doctrine where summary judgment evidence presented by insured included the declaration of an individual with personal knowledge of the property's pre-storm condition who stated that the damage occurred during the policy period).

In addition, Highway 67 presents the expert report of its roof expert, Jeff Seaton, as well as his Declaration. Pl.'s Summ. J. Resp. App., ECF No. 150-2 at 150-58 (Seaton Decl.).

Seaton inspected the Arlington Property on February 23, 2023. The purpose of the inspection was to determine the extent of damage caused by hail events that occurred on April 27, 2020. *Id.* at 150, 155, Seaton Decl. ¶¶ 2, 10. Seaton concluded from his inspection and testing that as a result of the April 27, 2020 hailstorm, the integrity of the roof membrane had been compromised and the TPO membrane needed to be stripped down to the decking and replaced. *Id.* at 154, Seaton Decl. ¶ 7.

In reaching this opinion, Seaton concluded that no prior hailstorm (including the June 5, 2018 hailstorm) that pre-dated the April 27, 2020 hailstorm caused damage to the roof at the Arlington Property to the extent it necessitated the removal of all layers of the roof and a full replacement of the roof. *Id.* at 152-57, Seaton Decl. ¶¶ 6-13.

Viewing this evidence in the light most favorable to Highway 67, a reasonable jury could find the April 27, 2020 storm caused damage to the roof of the Arlington Property and a reasonable jury could apportion any damage caused by this storm if it determined some damage occurred outside the Policy period. *See, e.g.*, *Bible Baptist Church v. Church Mut. Ins. Co.*, 2023 WL 1931912, at *7 (N.D. Tex. Jan. 18, 2023) (Reno, J.), *accepted by* 2023 WL 1931350 (N.D. Tex. Feb. 10, 2023) (Kacsmaryk, J.) (denying insurer's motion for summary judgment predicated on concurrent causation doctrine finding that "Bible Baptist has met its burden of allocation" based on the declaration of its roofing contractor that roof required complete replacement based on storm within policy period rather than a prior storm outside the policy period).

While Nationwide offers evidence to the contrary, this evidence serves only to create a factual dispute for a jury and does not warrant summary judgment in its favor. *See Advanced Indicator*, 50 F.4th at 476-77. *See also Bible Baptist Church*, 2023 WL 1931912, at *7.

ii.    Concurrent versus Independent Causes

A final issue remains relating to the doctrine of concurrent causation that the Court must consider. Highway 67 contends that Nationwide improperly applies the concurrent cause doctrine because it has raised a genuine dispute of material fact that "the covered hail loss is the independent cause of its damages to the exclusion of any prior weather event." Pl.'s Summ. J. Resp. Br. 34.

"Texas courts have long recognized that for causes to be concurrent, one must '[contribute] to the damage produced by the other cause.'" *Bible Baptist Church*, 2023 WL 1931912, at \*7 (quoting *Cagle v. Commercial Standard Ins. Co.*, 427 S.W.2d 939, 944 (Tex. Civ. App.—Austin 1968, no writ)). Therefore, an insurer only escapes liability under the doctrine when a covered peril and an excluded peril concurrently cause a loss, meaning they must act in concert in some way. *Id.* (citing *Guaranty Nat. Ins. Co. v. North River Ins. Co.*, 909 F.2d 133, 137 (5th Cir. 1990); *Seahawk Liquidating Trust v. Certain Underwriters at Lloyds London*, 810 F.3d 986, 994-95 (5th Cir. 2016)).

In *Bible Baptist Church*, the insured similarly argued that the concurrent causation doctrine did not apply because replacing the church roof was necessary as a result of an entirely independent cause, a 2019 storm that took place during the policy period (rather than a 2017 storm that took place prior to the policy period). Citing to the "declaration from Johnny Widener, Bible Baptist's pastor, that the roof areas in question 'were in good order and fully functional' prior to the 2019 storm[,]" the court concluded that "there remains [] a genuine dispute on [whether there were two independent or concurrent causes] to such a degree that summary judgment is not appropriate." *Id.* at \*8.

Here, Highway 67 argues that "[r]egardless of any prior hailstorm that may or may not have even impacted the area surrounding or nearby the [Arlington] Property roof, there is a genuine issue of material fact as to the April 27, 2020 hailstorm being the independent cause of the failure of the roof system and the

56

need for replacement." Pl.'s Summ. J. Resp. Br. 34. As in *Bible Baptist Church*, in this case, Jordan is his Declaration states that "[p]rior to the April 27, 2020 hailstorm, the roof . . . and HVAC units were fully operational and in good condition. After the April 27, 2020 hailstorm, the roof leaked and the HVAC stopped functioning properly." Pl.'s Summ. J. Resp. App., ECF No. 150-2 at 19, Jordan Decl. ¶ 11.

Viewing all evidence in the light most favorable to Highway 67, the non-moving party, the Court finds that Highway 67 has a raised a genuine dispute of material fact as to whether there were two independent or concurrent causes to such a degree that summary judgment is not appropriate.

### 3. Both parties' motions for summary judgment on Highway 67's claim for violations of the TPPCA should be denied.

The parties have filed cross-motions for summary judgment on Highway 67's claim that Nationwide violated the TPPCA. Highway 67 contends that "Nationwide is liable for violating the [TPPCA] by not paying the full amount of interest and attorney's fees owed for its failure to pay the [Corrected] Appraisal Award timely and in full." Pl.'s Summ. J. Br. 7. It seeks partial summary judgment on its claim that Nationwide violated §§ 542.056(a), 542.058, and 542.060 of the TPPCA as a matter of law. *Id.*

In response, Nationwide contends that the Court should deny Highway 67's motion for summary judgment on its claim under the TPPCA because (i) Highway 67 has failed to establish Nationwide's liability under the Policy, thereby

precluding summary judgment on its extracontractual claim; and (ii) Nationwide has produced evidence that it complied with all statutory deadlines. Def.'s Summ. J. Resp. Br. 31-32, 32-33. Nationwide has filed a cross-motion for summary judgment on Highway 67's claim that it violated the TPPCA, making the same arguments as in its response brief. Def.'s Summ. J. Br. 24-26.

To prevail on a Chapter 542 cause of action, Highway 67 must prove "(1) a claim under an insurance policy; (2) that the insurer is liable for the claim; and (3) that the insurer has failed to follow one or more sections of [the Prompt-Payment Statute] with respect to the claim." *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 518 (5th Cir. 2015) (quoting *GuideOne Lloyds Ins. Co. v. First Baptist Church of Bedford*, 268 S.W.3d 822, 830-31 (Tex. App.—Fort Worth 2008, no pet.)).

As set forth in the previous section, Highway 67 has not established that Nationwide is liable for the claim at this summary judgment stage of litigation because it has not carried its burden of establishing the absence of a genuine dispute of material fact as to Nationwide's liability under the Policy. Accordingly, the District Court should deny Highway 67's motion for partial summary judgment on its claims for violations of the TPPCA. *See Harris v. Am. Prot. Ins. Co.*, 158 S.W.3d 614, 623 (Tex. App.—Fort Worth 2005, no pet.) ("An insurer will not be held liable for violating [the TPPCA] unless it is found liable for the underlying insurance claim."). Whether Defendant wrongfully delayed payment need not be

considered unless and until a jury determines that Nationwide is liable under the Policy for amounts in excess of what it has already paid on the claim.

Further, as the Court has already determined that Highway 67's breach of contract claim will proceed to trial, the Court concludes that summary judgment in Nationwide's favor on this claim is premature and, therefore, Nationwide's motion for summary judgment on this claim should also be denied.

### 4. *Nationwide's motion for summary judgment on Highway 67's claims for breach of the duty of good faith and fair dealing and violations of Chapter 541 of the Texas Insurance Code and of the DTPA should be denied.*

Nationwide seeks summary judgment on Highway 67's claims for violations of Chapter 541 of the Texas Insurance Code and the DTPA, as well as for breach of the duty of good faith and fair dealing. In support, Nationwide contends it is entitled to summary judgment because (1) Highway 67 has not "establish[ed] a right to receive benefits under the policy or an injury independent of a right to benefits"; and (2) "even if [Highway 67] was able to establish some evidence-based dispute over amounts owed on the policy, [it] cannot recover on its extra-contractual claims because it cannot establish anything more than a bona fide dispute exists over the amounts allegedly owed on the claim." Def.'s Summ. J. Br. 27.

Under Texas law, "[a]n insurer has a duty to deal fairly and in good faith with its insured in the processing and payment of claims." *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995); *see also Medical Care Am., Inc. v. Nat'l Union*

*Fire Ins. Co.*, 341 F.3d 415, 425 (5th Cir. 2003). "A breach of the duty of good faith and fair dealing is established when: (1) there is an absence of a reasonable basis for denying or delaying payment of benefits under the policy and (2) the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim." *Casey v. State Farm Lloyds*, 2022 WL 3702024, at *5 (N.D. Tex. Aug. 26, 2022) (Lindsay, J.) (citation omitted); *see also Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55-56 (Tex. 1997) ("An insurer breaches its duty of good faith and fair dealing when the insurer had no reasonable basis for denying or delaying payment of [a] claim, and the [insurer] knew or should have known that fact.") (internal quotations omitted).

Whether an insurer's liability has become reasonably clear is a question of fact. *See Giles*, 950 S.W.2d at 56 ("[W]e reject the suggestion that whether an insurer's liability has become reasonably clear presents a question of law for the court rather than a fact issue for the jury."). On the other hand, "[e]vidence establishing only a bona fide coverage dispute does not demonstrate bad faith." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998); *see also State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997) (evidence that shows a "bona fide coverage dispute does not, standing alone, demonstrate bad faith."). Stated another way, "an insurer will not be faced with a tort suit for challenging a claim of coverage if there was any reasonable basis for denial of that coverage." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997).

Texas courts have ruled that these extra-contractual tort claims require the same predicate for recovery as bad faith causes of action in Texas. *See Hall Arts Ctr. Office, LLC v. Hanover Ins. Co.*, 327 F. Supp. 3d 979, 999 (N.D. Tex. 2018) (Fitzwater, J.) (citation omitted); *see also Casey*, 2022 WL 3702024, at *5 (quoting *Nat'l Sec. Fire & Cas. Co. v. Hurst*, 2017 WL 2258243, at *6 (Tex. App.—Houston [14th Dist.] May 23, 2017) ("extra-contractual tort claims pursuant to the Insurance Code [ ] require the same predicate for recovery as a bad faith claim under a good faith and fair dealing violation." "When an insured joins claims under the Texas Insurance Code [ ] with a bad faith claim, all asserting a wrongful denial of policy benefits, if there is no merit to the bad faith claim, there can be no liability on either statutory claim." *Id.* (quoting *O'Quinn v. General Star Indem. Co.*, 2014 WL 3974315, at *8 (E.D. Tex. Aug. 5, 2014)). The Court, therefore, examines Highway 67's extracontractual claims for violation of Chapter 541 of the Texas Insurance Code, DTPA, and breach of the common law duty of good faith and fair dealing simultaneously.

Because the Court has already concluded that Highway 67's breach of contract claim should proceed to trial, *see supra*, it should also deny Nationwide's motion for summary judgment as to Highway 67's extracontractual claims. Nationwide's primary basis for summary judgment is that Highway 67 cannot recover policy benefits for a statutory violation under the Texas Insurance Code if the insured does not have a right to benefits under the Policy. *See* Def.'s Summ. J. Br. 27. The District Court should reject this argument because, as set forth above,

Highway 67 has raised a genuine dispute of material fact as to whether it may still recover under the Policy.

The only additional argument for summary judgment on Highway 67's extracontractual claims is that Highway 67 cannot prove Nationwide's bad faith where the parties had a bona fide dispute over coverage. *See id.* at 27-31. The District Court should still deny the request for summary judgment. The summary judgment evidence reflects that, despite uncontested evidence that its own appraiser, Lochridge, concluded that a full roof replacement was required at the Arlington Property and that he had appraised the loss at $621,361.8, *see* Pl.'s Summ. J. App. at 166, Nationwide declined to pay for replacement and instead calculated, without any references to the Policy or prior payments or Lochridge's own estimate of the appraisal loss, that Nationwide owed an additional payment of only $135,004.0749 (ACV) plus $16,177.65 in prompt penalty interest, for a total of $151,181.72.50. *See* Def.'s Summ. J. App., ECF No. 144 at 1; *id.*, ECF No. 143-1 at 179-86. This raises the issue of whether it was reasonable for Nationwide to ignore its own appraiser and opt instead to pick and choose which line items of the Corrected Appraisal Award it believed were covered under the Policy.

Further, Nationwide did not have an engineer inspect the roof at the Arlington Property until after it issued payment in the amount of $18,758.32 on June 26, 2020, and after its insured invoked appraisal. An insurer may breach its duty of good faith and fair dealing by failing to reasonably investigate a claim. *Giles*, 950 S.W.2d at 56 & n.5.

And, while a payment summary shows Nationwide issued payment in the amount of $18,758.32 on June 26, 2020, unlike with the North Richland Hills Property, absent from the claim file is any written communication documenting that Nationwide provided an estimate to Highway 67 or any of its representatives or any explanation of the basis for the $18,758.32 payment as to what items were covered or not covered under the Policy.

Finally, Nationwide never challenged the appraisal award or the authority of Umpire Brown to issue the award on the North Richland Hills Property (for which Umpire Brown agreed with Lochridge's appraisal) but only the Arlington Property (for which Umpire Brown agreed with Laczynski's appraisal). This inconsistency is not explained.

On this summary judgment record, if the fact finder agrees there was not a reasonable basis for refusing to pay the entire amount of the Corrected Appraisal Award, a reasonable factfinder could conclude that Nationwide acted in bad faith in paying only a portion of the award as to the Arlington Property. For these reasons, the District Judge should deny Nationwide's motion for summary judgment on Highway 67's claims for violations of Chapter 541 of the Texas Insurance Code and the DTPA, as well as for breach of the duty of good faith and fair dealing.

### 5. Nationwide's motion for summary judgment as to consequential damages should be denied.

Highway 67 argues it is entitled to consequential damages for its anchor tenant's early lease termination, including lost rents, broker fees, tenant improvement allowances, and a finance charge from restructuring its loan on the property. *See* Third Am. Compl. ¶ 29. Highway 67 contends these damages were a foreseeable result of Nationwide's failure to pay the full amount of the Corrected Appraisal Award, which included amounts for roof replacement at the Arlington Property.

Highway 67 has introduced evidence that its anchor tenant, Dirt Cheap, terminated the lease before its expiration due—in part—to the unrepaired water and roof damages allegedly caused by the hailstorm at issue. *See* Pl.'s Summ. J. Resp. App., ECF No. 150-2 at 253-56 (e-mail from Frasinetti to Jordan dated April 13, 2023).

Nationwide contends it is entitled to summary judgment with respect to consequential damages because Highway 67 "cannot establish the claimed damages were foreseeable at the time of contracting." Def.'s Summ. J. Br. 35. It also argues that the damages are too remote and "not directly traceable to the wrongful act." *Id.* at 36.

Texas law requires that consequential damages be foreseeable at the time of contracting. *Signature Indus. Servs., LLC v. Int'l Paper Co.*, 638 S.W.3d 179, 184 (Tex. 2022); *accord Basic Cap. Mgmt., Inc. v. Dynex Com., Inc.*, 348 S.W.3d 894,

901 (Tex. 2011) ("Foreseeability is a fundamental prerequisite to the recovery of consequential damages for breach of contract."). "A loss that is not the probable consequence of the breach, from the breaching party's perspective at the time of contracting, is not foreseeable." *Signature Indus. Servs.*, 638 S.W.3d at 186 (quotation omitted); *accord id.* ("[C]onsequential damages are not recoverable unless the parties contemplated at the time they made the contract that such damages would be a probable result of the breach.") (quoting *Stuart v. Bayless*, 964 S.W.2d 920, 921 (Tex. 1998)). In addition, consequential damages "must be directly traceable to the wrongful act and result from it . . . . [I]f damages are too remote, too uncertain, or purely conjectural, they cannot be recovered." *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997).

Instructive here is the case of *Standard Fire Ins. Co. v. Fraiman*, 588 S.W.2d 681, 684 (Tex. Civ. App. 1979). In *Fraiman*, an appraiser was appointed, an award was made, and the insurer paid the appraised amount of the loss. *Id.* at 683. Fraiman then sued the insurer, Standard, for damages resulting from the insurer's breach of the appraisal provision by refusing to submit the amount of loss caused by fire to the apartment complex to the appraisal process. *Id.* A jury awarded Fraiman consequential damages, including lost apartment rentals and "telephone and travel expenses." *Id.* On appeal, the insurer contended that the submitted "consequential damages" were not recoverable under a standard fire insurance policy and that the only amounts contemplated by the parties were those covered fire losses that the insurer had contracted to pay as set out in the policy. *Id.* The

court of appeals disagreed. *Id.* at 684. Noting that the insurer had not repudiated its obligation to pay under the policy, the court characterized the suit as based upon a "procedural provision" of the policy, not upon the terms of the policy itself and that "a party clearly breaching an appraisal clause of an insurance policy should be liable in damages caused by such breach." *Id.* The *Fraiman* court held that with the presence of bad faith or a controlling statute (which would include a DTPA claim) the plaintiff could recover consequential damages for breach or repudiation of an appraisal provision in an insurance policy. *Id.* at 684.

On this record, the Court rejects Nationwide's argument that it is entitled to judgment as a matter of law on Highway 67's claim for consequential damages. The Court finds that Highway 67 has raised a genuine dispute of material fact regarding whether its lost tenant damages were foreseeable following Nationwide's decision to not pay the full amount of the Corrected Appraisal Award. And, whether the damages are directly traceable to its actions is a disputed issue for the jury. In addition, the Court rejects Nationwide's contention that Highway 67's lost tenant damages are remote or cannot be determined. Highway 67 set forth its damage calculations in its Supplemental Rule 26 Disclosures as well in other filings. *See* ECF No. 35 at 4-5; ECF No. 164-1 at 3.

For these reasons, the District Judge should deny Nationwide's motion for summary judgment as to Highway 67's claim that it is entitled to consequential damages stemming from its anchor tenant's lease termination.

### Order and Recommendation

For the above-stated reasons, the undersigned DENIES Defendant's Renewed Motion to Strike or Limit Plaintiff's Retained Expert Jeff Seaton (ECF No. 138). Further, the undersigned recommends that the District Judge:

(1)    **GRANT in part** and **DENY in part** Plaintiff's Motion for Partial Summary Judgment (ECF No. 135). Specifically, the District Judge should **GRANT** Highway 67's motion with respect to its claim that the Corrected Appraisal Award is valid and enforceable and its claim that Nationwide's Affirmative Defense No. 17 should be dismissed insofar as it seeks to set aside the Corrected Appraisal Award and **DENY** its Motion for Partial Summary Judgment with respect to its claim that Nationwide is liable for breach of contract for failing to pay the full amount of the Corrected Appraisal Award and for violations of the Texas Prompt Payment of Claims Act; and

(2)    DENY Defendant's Motion for Summary Judgment and, in the Alternative, Motion to Set Aside Appraisal Award (ECF No. 141).

**SO ORDERED and RECOMMENDED.**

June 17, 2024.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## <u>INSTRUCTIONS FOR SERVICE AND</u><br><u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).